**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN HURST, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT,<br><br>      Defendants. | **CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND**<br><br>Civil Action No. 22-cv-3928 |

BRIAN HURST ("Plaintiff" or "proposed class representative" or "Hurst") through his counsel, on behalf of himself and all other individuals and entities similarly situated as more fully described *infra*, initiates this class action and alleges as follows:

1.      BMW of North America, NA ("BMW NA") and Defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") (together jointly "Defendants"), designed and manufactured certain 2014 through and including 2018 model year i3 BMW passenger vehicles (hereinafter collectively "Class Vehicles" or "Class Vehicle") sold in the United States.[1]  Some i3 models were powered solely by a high voltage lithium ion battery.  Other models had an electric battery and a small gasoline engine to extend the range of the vehicle.

2.      This action arises from the uniform false representations disseminated by the Defendants that materially overstate the range of the Class Vehicles whether in battery only mode or in gasoline engine range extender mode in cold weather.  Class Vehicles cannot achieve the

---

[1] Class Vehicles include but are not limited to the i3 family of vehicles, including the i3, i3s, and i3 REx (REx indicates i3 models having a gasoline-powered Range Extender engine) for model years 2015, 2016, 2107 and 2018.

driving range promised in Defendants' advertising and promotional materials when operated in cold weather conditions.  Proposed class representative Hurst on behalf of himself and members of the class requests injunctive relief, monetary damages, including multiple damages where applicable, court costs and attorney fees against each of the respective BMW entities based upon their breach of express warranty, breach of implied warranty, misrepresentation, unfair and deceptive business practices and unjust enrichment, and violation of consumer protection laws of New Jersey.

3.      To successfully market an electric or hybrid vehicle (powered by battery and/or an internal combustion engine) to the American public, range is critical.  Since battery charging takes more time than refilling a gasoline tank, and because charging stations are not nearly as common as gas stations, an electric vehicle's usefulness is directly related to the distance the automobile can travel before needing a recharge.

4.      So-called electric vehicle "range anxiety" is a consumer fear that the electric vehicle does not have sufficient battery capacity or charge to reach its intended destination.  Tesla founder Elon Musk believes that "one of the biggest drawbacks to plug-in cars [is] fear of running out of juice before getting to a destination."  Range anxiety is the "biggest challenge for the electric vehicle sector."[2]

5.      Electric and plug-in hybrid vehicle buyers particularly rely on manufacturer advertisements and representations concerning an automobile's ability to travel a specified distance.  Modern all-electric vehicles were not introduced in the U.S. market until 2010[3].  Sales

---

[2]  Jon Hurdle, *Toward a Cure for Range Anxiety*, THE NEW YORK TIMES (Feb. 11, 2013), http://green.blogs.nytimes.com/2013/02/11/toward-a-cure-for-range-anxiety/?_r=0
[3] *See,* U.S. Dept. of Energy, *The History of the Electric Car* (Sept. 15, 2014), *available at* https://www.energy.gov/articles/history-electric-car.

of electric vehicles had reached only 4% of all vehicle sales in January 2022.[4]   Consumer experience with electric and plug-in hybrid cars is not yet common.  Nationwide cumulative sales of plug-in vehicles (including plug-in hybrids as well as all-electrics) amounted to about 2.3 million units over the past decade.[5]  Assuming all those vehicles are operational, that is still less than one percent of the nationwide U.S. vehicles in operation in 2020.[6]

        6.      Driving range of electric and plug-in hybrid vehicles are calculated under optimum driving conditions, e.g., in a laboratory under controlled conditions with ambient temperatures ranging between 68 to 86 degrees Fahrenheit.

        7.      The Defendants' promotional advertising for Class Vehicles stated that mileage range for vehicles operating solely on the electric motor was 81 miles.  The range of Class Vehicles equipped with the optional gasoline range extender engine was advertised as 150 miles.[7]  These advertised ranges are far beyond the range Class Vehicles can provide in states where cold weather exists in the winter, such as New Jersey.  In cold weather, Class Vehicles only attain a fraction of their advertised range.  In Plaintiff's case, by way of example, the window sticker indicated that mileage range for his vehicle operating solely on the electric motor was 72 miles.  However, he was only able to obtain a range of 39 miles on a fully charged battery in the winter months.

---

[4] *See,* Alliance for Auto. Innovation, *Reading the Meter 7* (Feb. 3, 2022), *available at* https://autosinnovate.org/posts/papers-reports/reading-the-meter-2-3-2022.

[5] *See,* Argonne Natl. Laboratory, *Light Duty Electric Drive Vehicles Monthly Sales Updates,* available at https://www.anl.gov/es/light-duty-electric-drive-vehicles-monthly-sales-updates.

[6] *See,* Alliance for Auto. Innovation, *Get Connected* at 7(Dec. 16, 2021), available at https://www.autosinnovate.org/posts/papers-reports/get-connected-q3-2021; *see also,* U.S. Bureau of Transp. Stat., *Number of U.S. Aircraft, Vessels, Vehicles, and Other Conveyances,* available at https://www.bts.gov/content/numbers-us-aircraft-vehicles-vessels-and-other-conveyances.

[7] These ranges improved slightly for i3 model year vehicles manufactured after Plaintiff's vehicle.

Nowhere in Defendants' advertising and/or marketing materials are the adverse effects of cold weather on vehicle range discussed.

8.      As a result, Plaintiff and members of the proposed class cannot operate their respective Class Vehicles over distances that they expected to be able to travel, and owners of Class Vehicles with range extending engines are forced to spend money on gasoline to obtain the advertised electric motor range advertised.  The ownership value of Class Vehicles is diminished by increased costs and reduced mileage range caused by cold ambient temperatures.

9.      BMW AG is one of the largest and most prestigious automobile designers and manufacturers in the world.  Capitalizing on consumer preference for longer range electric vehicles, BMW AG and its American subsidiary BMW NA promoted through extensive advertising the range of Class Vehicles.  In the course of these activities, the Defendants engaged in misleading and deceptive advertisement practices.  These practices included but are not limited to falsely advertising the real-world mileage range of Class Vehicles without disclosing that operation of Class Vehicles, in cold weather states such as New Jersey, would substantially diminish the mileage range.  Specifically, BMW advertised nationally the following range for Hurst's Class Vehicle:



https://www.nalleybmw.com/bmw-i3.htm (last visited Mar. 22, 2022).

10.     BMW NA in conjunction with the approval and oversight of BMW AG conducted Class Vehicle advertising on its website and also disseminated printed materials including but not limited to sales and training materials to more than 320 authorized BMW dealers in the United States.  The information was relied upon by Class Vehicle purchasers in determining whether to purchase Class Vehicles.

11.     Defendants knew that cold temperatures would diminish performance of Class Vehicles and would cause significantly decreased battery driving range and increased vehicle fuel consumption by the range extender engine's usage.

5

12.    Plaintiff Hurst viewed and relied upon the above advertisement for Class Vehicles prior to purchasing his vehicle.

13.    Range extenders were a brand new technology when BMW introduced them and remain an uncommon feature. *See,* enrg.io, *Which Electric Vehicles Come With Range Extender* (May 5, 2021) available at https:////enrg.io/which-electric-vehicles-come-with-range-extender/.

14.    BMW NA advertised that the i3 equipped with the Range Extender "[e]xtends driving pleasure" by doubling the range of the i3 from 81 miles to 150 miles.[8]

15.    In a promotional video for the i3 posted on YouTube in December 2011, Rich Steinberg, Manager of Electric Vehicle Operations and Strategy for BMW NA boasted, "The nice part about the i3 is that we're also offering an option what we call a REx, a range extender… which will essentially allow you to double the range of the EV." *See,* https://www.youtube.com/watch?v=Dk6_kCQtdNE (last visited Mar. 23, 2022).

16.    In another promotion video for the i3 posted on YouTube on October 3, 2013, Jacob Harb, Head of Electric Vehicle Operations and Strategy for BMW NA boasted, "The range is 100 miles with a single charge." *See,* https://www.youtube.com/watch?v=vQwzZDcyN_U (last visiting Mar. 23, 2022).

17.    As illustrated in the advertisement above, BMW NA broadly boasted about the range of the i3 as well as the i3 REx.  On its website, BMW NA used a graphic to illustrate its claim that the i3 Range Extender extends the vehicle range from 81 miles per charge to 150 miles per charge.

---

[8] Other material accompanying Hurst's Class Vehicle promised a minimum of 72 miles of range per battery charge without the range extender.

18.     The auxiliary gasoline range extender engine in Class Vehicles is a modified 647cc inline two-cylinder engine found in BMW's C650 GT maxi scooter.  The range extender engine is used to power a generator, which in turn, charges the i3's battery to provide additional range to allow the operator to get to the next charging location, and not for long distance travel.  The REx model has lower all-electric range due to the extra weight of the twin-cylinder gasoline engine.

19.     BMW NA, in consultation with and approval from BMW AG, charged a premium of $3,850 for a BMW i3 equipped with a REx engine over the base price of the purely electric model of the i3.  The above advertisements and representations on BMW websites emphasize the point that buyers are extremely attuned to learning what the vehicle range is in making the purchasing decision.

20.     Neither BMW NA nor BMW AG inform consumers that the range and performance estimates advertised on their uniform marketing and promotional materials do not represent real-world Class Vehicle operating conditions, and that cold ambient temperatures will significantly reduce Class Vehicle battery performance and range both in pure battery mode and range extender mode.

21.     In October 2018, Plaintiff purchased a certified pre-owned 2015 BMW i3 equipped with a Range Extender (marketed as "REx") from an authorized New Jersey BMW dealer for $19,250.  The vehicle had 23,261 miles at the time of purchase.  During ordinary, real-world use in cold weather, Plaintiff's Class Vehicle displays a battery range of only 43 miles when fully charged.  After driving approximately 5 miles, the range drops to 33 miles.

22.     Prior to the purchase of his Class Vehicle, Hurst researched various electric vehicles on the market, and opted to purchase the i3 REx in large part because of its advertised ranges.  Specifically, Hurst decided to purchase the i3 REx based in part on BMW's advertising and

7

representations that the i3 could achieve 80 miles of battery only range and 150 miles with the Range Extender.  These representations were among the primary reasons Plaintiff chose the i3.  At the time of purchase, Plaintiff was reassured by various BMW sales representatives that cold weather would not significantly, or in fact, at all, diminish the i3's electric driving range.

23.     Plaintiff would not have purchased the i3, or would have paid less for it, had he known that cold weather severely reduces the driving range that the i3 battery even with a range extender.  Plaintiff has had to rely on the Range Extender gasoline engine more than he would have if the battery range was not misrepresented, costing him more in gasoline.  Plaintiff suffered a concrete injury as a direct and proximate result of Defendants' misrepresentations of the i3's driving range.

24.     The claims brought by Plaintiff and the proposed class are asserted under the New Jersey Consumer Fraud Act ("NJCFA") for false advertising, unconscionable commercial conduct and material omission.  Other claims include breach of implied, express warranty, negligent misrepresentation and unjust enrichment.

**Jurisdictional and Venue Statement**

25.     Federal jurisdiction exists by virtue of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711–1715 since there are in excess of 50,000 class members and the named proposed class representative and class members' aggregate damages exceed $5,000,000.00, exclusive of interest and costs.  Minimal diversity exists between the parties with respect to CAFA.

26.     The Defendants are persons under this jurisdiction's long-arm statute.  In the United States, BMW NA acts as the alter ego and/or agent of BMW AG as well as the warrantor with

respect to the class vehicles. *In personam* jurisdiction exists over the Defendants under this jurisdiction's so-called "long arm statute."

27.     The Defendants directly and through their agents regularly transact business and otherwise derive substantial revenue in this jurisdiction and throughout the entire United States. The Defendants also conduct continuous, purposeful and pervasive economic activities in this jurisdiction and throughout the United States.   The Defendants intentionally and purposefully placed their vehicles and/or components in the stream of commerce in this jurisdiction and throughout the United States.   Subjecting the Defendants to *in personam* jurisdiction in this jurisdiction does not violate the Defendants' due process rights and comports with requirements of fair play and substantial justice.

28.     Venue is conferred by 28 U.S.C. § 1391 as the Defendants regularly and purposefully conducted business in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

**The Parties**

29.     Hurst is an adult individual who resides in Wanaque, New Jersey.  In October 2018, Hurst purchased (while still under the manufacturer's new vehicle warranty) a used 2015 BMW i3 with Range Extender from an authorized New Jersey BMW dealer.

30.     Defendant BMW NA is a duly organized Delaware corporation with a principal place of business located at 300 Chestnut Ridge Road in Woodcliff Lake, New Jersey.  BMW NA manufactures, imports, distributes and/or sells BMW motor vehicles including all Class Vehicles and also acts as the authorized representative of BMW AG in the United States.  BMW NA operates its national marketing, warranty, consumer relations and engineering offices from its New

Jersey facility.  BMW NA also controls all other aspects of its United States activities from New Jersey including Class Vehicle importation.  BMW NA is a subsidiary of BMW AG.

31.     BMW NA sells and distributes vehicles manufactured by both BMW AG and BMW NA throughout the United States via a network of over 320 independent authorized dealerships.  BMW NA drafted and published the owner's manual and Service and Warranty Information pamphlet and other materials that accompanied class vehicles and/or were published on the Internet.  BMW NA acted, and continues to act, as the warrantor of vehicles constructed by both Defendants sold in the United States.

32.     At all relevant times, BMW NA acted as an authorized agent, representative, servant, employee and/or alter ego of BMW AG performing activities concerning but not limited to advertising, marketing, warranties, warranty repairs, dissemination of technical information and monitoring the performance of BMW vehicles in the United States, including substantial activities that occurred within this jurisdiction.  There is sufficient overlapping and intertwining of the activities of BMW AG and BMW NA in the United States that the principles of corporate separateness should not be applied.

33.     BMW AG is a duly organized German corporation with a principal place of business in the city of Munich in the province of Bavaria, Germany.  BMW AG designed, manufactured and tested Class Vehicles including but not limited to the battery's ability to maintain a charge and overall vehicle ranges in battery only and range extender mode.  BMW AG drafted and published the owner's manual and Service and Warranty Information pamphlet and other materials that accompanied Class Vehicles and/or were published on the Internet.  BMW AG is the parent company of BMW NA.

34.     BMW AG maintains and/or operates cold weather testing sites in Sweden and elsewhere to further ascertain pre-release Class Vehicle performance, including the Class Vehicle battery's ability to perform and maintain an electric charge under cold weather conditions. Consequently, Defendants knew or should have known that Class Vehicle battery performance would be severely impacted by cold ambient conditions.

35.     New Jersey has the most significant relationship to the conduct that gave rise to this litigation since the Defendants' wrongful activities were orchestrated at its New Jersey headquarters.  New Jersey law should govern all substantive aspects of this litigation.  Upon information and belief, the advertising distributed nationwide by BMW is created in New Jersey and emanates from its North American headquarters in Woodcliff Lake, New Jersey.  The website and information developed for BMW NA also is created in and emanates from New Jersey.

36.     Hurst intended for his wife to use the vehicle for her commute to work, which is between 20 and 30 miles each way.

37.     Hurst purchased the Class Vehicle when ambient outdoor temperatures in northern New Jersey are moderate.  However, several months after owning the vehicle, when the seasons changed and the outside temperatures dropped, the vehicle's dashboard display indicated that, despite a full battery charge, its electric range was less than 50 miles, which was inadequate for Hurst's wife's commute.  After driving only 1 to 2 miles in cold weather, Hurst's vehicle's electric range would indicate a further 10 mile range decline.

38.     Consequently, Hurst and his wife had to swap cars. Hurst's wife used their conventional internal combustion engine vehicle for her commute, while Hurst used the i3 REx for his commute, which is less distance.

39.     Because the range in Hurst's i3 REx is severely limited, Hurst has been forced to use his i3 REx only half as much as he had intended when he purchased the car.  To wit, his vehicle now has approximately 52,000 miles, which, after 39 months of ownership, averages approximately 736 miles per month.  When he purchased the Class Vehicle, Hurst intended that he and his wife would put 12,000-15,000 miles per year on the car while saving money and helping the environment.  Hurst also spends an additional $100 every month on gas to power the range extending engine.

40.     Hurst notified BMW NA that his Class Vehicle was achieving significantly diminished electric range than represented in Defendants' advertising.  BMW NA requested that Hurst bring his Class Vehicle to an authorized service center so that diagnostics could be run to determine the battery health.

41.     On or about February 18, 2021, Hurst took his Class Vehicle to the authorized BMW service center recommended by BMW for diagnostic testing of the battery.  The BMW technician who performed the diagnostics on Hurst's vehicle advised that he had charged Hurst's vehicle "all day" and "got the batteries up to room temperature again."  Nevertheless, Hurst's vehicle indicated that its electric range was only 55 miles, despite the battery charge indicator showing that the battery was fully charged.

42.     The BMW technician further advised that "the cold weather just puts a hurtin' on these batteries" and that if Hurst's car had been stored outside in 15-20 degree weather, the 50 mile electric range indicated on the instrument panel would "drop rapidly from 50 [miles] down to almost nothing quickly."  Thus, it was in February 2021 that Hurst learned of the false representations, his damages and the facts that give rise to his claim.

43.     Despite verifying that Hurst's electric range was drastically reduced due to cold weather, the BMW technician indicated that there were no faults found with Hurst's battery from the diagnostic testing performed.

44.     In addition to not being able to use his Class Vehicle for the distances intended, Hurst was also forced to operate the vehicle in ECO PRO + mode, an electricity saving setting that disables the air conditioning, heating and seat heating and sets the maximum speed to 55 mph.

**Nature of the Action**

45.     BMW AG designs, manufactures and sells automobiles, including electric and hybrid electric automobiles.  In 2013, BMW AG began production of the 2014 model year i3 with an electric powertrain using rear-wheel drive via a single-speed transmission and a lithium-ion ("Li-ion") battery pack and an optional range-extending gasoline engine.  The i3 was BMW AG's first mass-produced zero emissions vehicle.  The United States was the i3's best-selling market, with almost 37,000 units delivered through December 2019.

46.     Although the advertisements for the Class Vehicles set forth values for driving ranges, the Defendants failed to inform consumers that range performance would be significantly diminished in cold ambient temperatures.

47.     The Defendants were well aware that Class Vehicle operating ranges were overstated and do not factor in the effects of cold weather.

48.     In electric vehicles ("EV"), cold weather slows the chemical and physical reactions that make batteries work, specifically, conductivity and diffusivity, which leads to: (i) longer charging times; and, (ii) reduction in range.

49.     Winter range loss occurs for several reasons.  First, chemical and physical reactions in the battery occur more slowly in cold temperatures.  This reduces the battery's power output.

Cold temperatures inhibit diffusion, conductivity and reaction rates; this leads to increased voltage perturbation and heat generation.  Additional heat generation represents a waste of useful energy, which manifests as reduced driving range.  Second, in cold weather, an EV's engine heat is routed to warm the battery, meaning that cabin heating requires drawing energy from the battery, reducing the amount of energy left in the battery for driving.

50.     The American Automobile Association ("AAA") tested the range effects of 20 degrees Fahrenheit weather on several popular EVs, including the BMW i3s, and found that temperature alone could reduce range by 10-12%, while the use of in-vehicle climate control could amplify range loss to 40%.

51.     The i3s' 20% decline in range at 20 degrees Fahrenheit accounts for the worst performance among the EVs that AAA tested.

52.     The cold-weather related range loss by the Plaintiff's Class Vehicle and by inference all other Class Vehicles, surpassed those in the AAA report, as Plaintiff's Class Vehicle experienced range reduction of more than 50%.



Figure 19: Percent change in combined driving range relative to testing conducted at 75°F Image Source: AAA

53.     Whereas the above chart illustrate the range at 20 degrees Fahrenheit in the i3s, the chart does not represent the significant reduction in range caused by cabin heating (e.g. heating and seat warmers), which operators of Class Vehicles can reasonably be expected to use in cold weather.

54.     Cabin heating requires drawing energy from the battery, reducing the amount of battery life that is left for driving.  When factoring in cabin heating use with 20 degree Fahrenheit ambient temperatures, the following charts demonstrate that the i3s' driving range plummet in cold temperatures when i3 Class Vehicle operators use their car's heating system in cold temperatures.



Figure 23: Driving range at 20°F Image Source: AAA

Despite the dramatic decline of range in cold weather, BMW has concealed, or, alternatively, intentionally and materially understated, the i3s' performance deficiencies in cold weather.  The i3 Owner's Manual contains limited and highly ambiguous information concerning operation in cold temperatures:

- Page 68 – "Energy Recovery: Charge energy cannot be recovered in the following situations: When temperature of the high-voltage battery is very low or very high. In winter, it might be possible that the energy recovery is temporarily unavailable after startup."

- Page 83 – The range can be abruptly reduced or increased based on the following factors: Climate and terrain conditions; Driving style

55.     Defendants purposefully downplayed, or flat out deceived Plaintiff and the proposed class about the effects of cold weather temperatures on Class Vehicle range.

56.     Prior to manufacturing and then distributing a new vehicle, Defendants perform substantial field inspections and quality review of vehicles to determine whether any problems exist, and if so, to diagnose and correct them.

57.     Defendants knew or should have known that Class Vehicle range experienced significant decline in cold ambient temperatures and would not achieve the range indicated in Class Vehicle advertising or promotional materials.  Defendants knew or should have known that in cold weather, i3 drivers would use their vehicles' cabin heating system, which taxes the battery and dramatically exacerbates the decrease in Class Vehicles' range.

58.     Defendants were aware of other Class Vehicle owner complaints about the degradation of mileage in cold weather.  For example, complaints in online forums, which are carefully monitored by Defendants to prevent product disparagement, demonstrate the cold weather effect on Class Vehicle range.  For example:

- #14 · Nov 7, 2017:  The i3 not having an option of no heat but heated seats on in pro + is a huge oversight, the heater really impacts on range... I hope they fix this on the next model as when I had a nissan Leaf Tekna spec I used this option a lot to save battery & stay warm with heated steering wheel on too..
  R..
  *See*  https://www.speakev.com/threads/i3-cold-weather-range.82553/ (last visited January 17, 2022)

- 2017 i3 REx owner from Glen Cove, New York) posted January 16, 2017:  I am new 2017 i3 Rex owner on Long Island NY as of January 2017. "2cyl" handle because the other BMW I owned until recently was an R1150R boxer twin motorcycle, so all my BMW experience is with 2-cylinder powered vehicles. Truly impressed by the incredible dearth of information in the i3 user manual. I ran into the cold-battery power loss issue a few days ago when temps dropped to 15 deg F. I am working on getting a 240-V 40-A plug installed where

I can use it and have ordered a Juicebox, but right now I'm on 120 V using the 9 amp setting for the standard EVSE supplied, because I'm not very confident about the power handling capability of my existing outlet. Looking to do preconditioning when the weather is really cold (30 deg F doesn't seem to cause the power loss, but 15 deg sure did). Absolutely no information in the manual about maintaining battery temps to avoid this.
*See* https://bmwi.bimmerpost.com/forums/showthread.php?t=1335182 (last visited January 17, 2022)

59.    Additionally, when Plaintiff contacted various BMW NA dealerships to inquire about how ambient outdoor temperature affects the i3, Plaintiff was advised that cold weather had little or no range impact.  For example:

- In or around February 2021, Plaintiff wrote [an authorized BMW dealership] "Does the cold weather affect the range?"  A representative of the dealer replied, "No Brian.  I have been working with bmw for 8 years.  Never heard cold weather affect the performance and rang[e]."

- A floor manager from Century West BMW wrote Plaintiff, "I don't think it [cold weather] will affect it because BMW designed these cars for all weathers [sic]. There are a lot of them in Norway in Europe."

- During an online chat with a representative of BMW of Monrovia, Plaintiff was advised, "the weather won't affect the range[.]  More if you use air condition or if you drive on freeway versus stop and go trafic [sic]."

- During an online chat with a representative of BMW Seattle, Plaintiff was advised, "It [cold weather] does not change the range, but running the heat full blast with a heated seats can lower the range a little bit."

- In an email from a representative from BMW Roanoke, Plaintiff was advised, "the weather is not going to affect the range as far as it being hot or cold.  What affects your range is the condition of the roadways in which you often travel."

- In an email from a representative of BMW/Mini of Boston, Plaintiff was advised, "The cold weather shouldn't have any effect on the i3.  Did you want to come and try it out on[e] of these days this week?"

- In an email from a representative from BMW of Cape Cod, Plaintiff was advised, "The cold does impact the performance a bit but it is nothing significant.  Some of our staff have owned i3 and driven them through the winter months and did not have an issue in the cold.  All batteries get weaker with age but seasonal cold

weather in New England-like temperatures should not impact your decision to buy an electric vehicle."

- In an email form a representative from Ray Catena BMW of Westchester, New York, Plaintiff was advised, "Cold weather doesn't affect [t]he vehicle, like any vehicle as long as you have good tires on the vehicle and its charged up its ready to go."

**BMW NA Internally Acknowledged the Battery Range Reduction Due to Cold Weather.**

60.    The above comments demonstrate that Defendants coached its authorized dealer-ships to downplay or misstate the battery range reduction due to cold weather. Despite the above representations from various BMW authorized dealerships, Defendants were aware of the cold weather's effect on Class Vehicle range performance.  BMW NA distributed the following dealer training chart for internal use among its dealerships, but which was not provided to consumers, to provide talking points and guidance on how to address consumer concerns concerning cold weather's effect on range:



61.     While some BMW NA representatives did acknowledge to Plaintiff the effects of cold weather on i3 range performance, their advice frequently underestimated the amount of range decline caused by the cold, or advised that pre-conditioning the Class Vehicle could offset any decrease in range brought on by cold weather.

62.     BMW NA's foregoing representations concerning range are materially false and misleading for all of the reasons discussed above.

63.     Similarly, BMW NA's concealment and omission of the cold-weather effect on Class Vehicle range and fuel economy is also materially misleading.

64.     Plaintiff and the putative class reasonably relied on the Defendants' material false representations that Class Vehicles would achieve the advertised range during normal, real-world use.  A reasonable consumer would expect and rely on BMW's advertisements that the listed range would be reflective of the performance they could expect to get in normal driving conditions.  A reasonable consumer in today's market attaches material importance to advertisements of electric driving range, as range anxiety is one of the most, if not *the* most, important consideration in making purchasing decisions for electric and hybrid vehicles for consumers.

**Plaintiff and Class Members Suffered Economic Injury as a Proximate Result of BMW's Misrepresentations**

65.     Had the Defendants truthfully disclosed and reported the effects of cold ambient temperatures on Class Vehicles' range, decreased utility and, for REx models, increased fuel costs, consumers from states with cold winter weather climates, such as New Jersey, would have been less likely to purchase the Class Vehicles, or would have abstained outright.  As a proximate cause of Defendants' misrepresentations and deceptive conduct detailed in this complaint, Plaintiff and class members purchased Class Vehicles in reliance on Defendants' misrepresentations and

omissions in the mistaken belief that their vehicles could achieve ranges impossible for cold weather operating conditions.

66.     Plaintiff and the class members who purchased Class Vehicles did not get the benefit of the bargain they struck.  They paid for Class Vehicles under the mistaken belief that their cars could achieve an electric range far greater than is possible in cold ambient temperatures. Instead, they received cars of lesser value that suffer significantly reduced range cold weather conditions, rendering them unfit for cold weather operation.  The Class Vehicles that Hurst and the class members paid for and bargained to receive, while marketed as products which could provide a certain driving range, were actually products that could not provide such range on a seasonal basis, and were of lesser value than as advertised.  Accordingly, purchasers of the Class Vehicles, including Plaintiff and class members, have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Vehicles.

67.     The Defendants' misrepresentations and deceptive conduct in failing to truthfully disclose to prospective buyers that the Class Vehicles were not suitable for cold weather climates also  caused Plaintiff and class members substantial injury in the form of price premiums and overpayments for products that are severely limited in cold weather operation.

**Tolling of the Limitations Period**

68.     The Defendants had actual knowledge for several years that the marketing and advertising of its Class Vehicles was deceptive and misleading because its internal guidance to its dealerships and, likely, its undisclosed performance testing, confirm that the Class Vehicles could not attain the range represented to the public.

**Continuing Act Tolling**

69.     Beginning in or around 2013, Defendants continuously marketed and sold the Class Vehicles to unsuspecting car buyers.  The Defendants continuously represented these vehicles could attain ranges and fuel economy that is unimpeded and that greatly surpasses their real world performance in cold weather.  By continuously repeating these false representations and failing to disclose that cold weather materially diminishes battery performance, the Defendants engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that BMW might seek to apply.

70.     At all relevant times, the Defendants knew that they were concealing and misrepresenting material facts, but continued to tout the range performance and fuel efficiency of the Class Vehicles in its marketing and sales materials.  Plaintiff and class members' claims are not time barred.

**Fraudulent Concealment Tolling**

71.     State consumer protection laws, together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class members because of Defendants' fraudulent conduct, including but not limited to concealment and omission of material facts.

72.     The Defendants owe a duty to disclose to Plaintiff and the class members the true quality and nature of Class Vehicle performance in cold weather including that their range significantly declines and are perhaps unsuitable in regions that experience prolonged cold temperatures.

73.     This duty to disclose arose, among other things, due to the Defendants' representations that the Class Vehicles achieve a driving range far exceeding real world performance in cold weather.

74.     The Defendants knew about the affects of cold weather on Class Vehicle range at all relevant times.  Prior to selling Class Vehicles, the Defendants knew or, but for their extreme recklessness or indifference, should have known that Class Vehicles could not achieve the range and performance standards in cold conditions advertised.

75.     Despite their knowledge, the Defendants actively concealed this material information from the Plaintiff and other class members.  The Defendants continued to market the Class Vehicles' range irrespective of cold weather factors.

76.     The Defendants actively concealed the effect of cold weather on its Class Vehicles to continue to profit from their sale and prevent Plaintiff and other class members from bringing suit or otherwise seeking redress.

77.     Plaintiff and class members justifiably relied on the Defendants to disclose the true nature of the Class Vehicles they purchased and the true nature of the Defendants' testing, because the truth was not discoverable by Plaintiff and the other class members through reasonable efforts. Any applicable statute of limitations has been tolled by the Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

78.     Defendants are estopped from asserting that statutes of limitations were running for the duration of time Class Members relied on Defendants' fraudulent representations.

79.     Defendants are equitably estopped from asserting the statutes of limitations ran against the claims of class members.

**Further Allegations Supporting Tolling of the Limitations Period**

80.     Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Plaintiff and the Class that its advertised electric range for Class Vehicles could not be achieved in real-word driving conditions, particularly in cold ambient temperatures.

81.     Defendants had actual knowledge that Class Vehicle performance would be materially reduced by cold ambient temperatures either before or shortly after production of the Class Vehicles commenced.

82.     Upon information and belief, Defendants engaged in extensive field research and quality investigations and analysis concerning real-world driving conditions and cold weather reducing the range of Class Vehicles.

83.     Upon information and belief, Defendants revised their advertising materials for Class Vehicles to omit references related to range in response to growing consumer complaints.

84.     Defendants' advertising and marketing materials do not sufficiently or reasonably represent that actual driving conditions and cold ambient temperatures affect Class Vehicle range and fuel economy.

85.     Defendants knew prior to 2015 (the date prior to Class Vehicles being introduced into the U.S. market for the 2014 model year) that Class Vehicles would experience cold weather decreases in range.  Despite this knowledge, Defendants continued to sell Class Vehicles with range performance that could not be achieved in cold weather.  This knowledge is imputed to BMW AG because BMW NA was monitoring warranty claims and Class Vehicle performance in the United States and reporting back to its parent company located in Germany.

86.     Plaintiff and class members had valid and binding warranties and contracts with the

Defendants and were reasonably expected by Defendants to use their respective Class Vehicles in the manner in which passenger motor vehicles were used.

87.     Plaintiff and class members complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance and product use obligations for their respective Class Vehicles. Plaintiff and class members operated their Class Vehicles under normal anticipated conditions in noncommercial environments.

88.     Upon information and belief, Defendants had timely received notice of their breach of warranty claims through authorized representatives contacted by Plaintiff and have suffered no resulting prejudice.   Moreover, the Plaintiff contacted BMW NA directly and/or through an authorized dealership.

89.     Plaintiff was informed by multiple representatives of BMW NA that the vehicle would meet the extended range represented which turned out to be false.

90.     Through no fault of their own, the proposed class representative and class members did not possess sufficient technical expertise to recognize that cold ambient temperatures would affect their vehicles' range.  This information, however, was well known to the Defendants, but not revealed.

91.     The proposed class representative relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of the Defendants at the time of purchase and thereafter, including but not limited to the mileage range promoted in Defendants' advertising.

92.     The Defendants' misrepresentations and fraudulent statements were received by the proposed class representative prior to and at the point of his Class Vehicle purchase.  These representations were made by BMW dealers referencing advertisements concerning Class

25

Vehicles.  The representations created a reasonable belief the Class Vehicles would attain a certain range benchmark, and that the batteries should not have a problem adhering to Defendants' mileage representations, even in the cold weather.

93.    Defendants actively concealed the true, reasonably expected range in cold ambient temperatures of Class Vehicles from the Plaintiff and all Class Vehicle purchasers.  Defendants intentionally failed to inform Class Vehicle purchasers that Class Vehicles incorporated a battery that was susceptible to cold ambient temperature reductions in range within the reasonably expected useful life of the vehicle.

94.     The Defendants intentionally failed to inform Class Vehicle purchasers that the reduced Li-ion battery performance in cold ambient temperatures in Class Vehicles results in higher operational costs due to recommended battery "pre-conditioning" and higher electricity costs.

95.    The Defendants' sales representatives made false and fraudulent representations to class members as to the effects of cold ambient temperatures on Class Vehicle range.   The Defendants' employees falsely represented either certain conditions for which the Defendants were not responsible as the basis for the failures in Class Vehicle battery performance, or that cold ambient temperatures did not affect Class Vehicles.  They falsely stated that Defendants were not responsible for the resulting Class Vehicle failures and/or denied the existence of known Class Vehicle vulnerabilities to cold ambient temperatures.

96.     Authorized BMW dealers either did not have knowledge of and/or were counseled not to admit that any defects existed in Class Vehicles or that unattainable ranges were incorporated in advertising.  BMW dealers (who also had a vested financial interest in concealing and suppressing the actual performance of Class Vehicles in cold weather) improperly blamed

vehicle failures on certain conditions for which Defendants would not be responsible and/or denied the existence of cold weather vulnerabilities in the battery.

97.     The Defendants had actual knowledge, constructive knowledge and/or should have known, upon proper inquiry and testing, that Class Vehicles were vulnerable with respect to their batteries, suffered from extensive premature performance degradation during the warranty period and did not have a normal and/or reasonable useful life before sales of Class Vehicles commenced in the United States.  This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including the proposed class representative and class members. The proposed class representative and class members were ignorant of this technical information through no fault of their own.

98.     The Defendants acted to conceal the battery vulnerability to cold weather during the warranty period so that repair costs would be shifted to the proposed class representatives and class members once the warranty expired.

99.     Although the Defendants knew that vulnerabilities in Class Vehicle batteries caused diminished cold weather performance, the Defendants knowingly and actively concealed material information from prospective purchasers and actual purchasers with the intent to deceive purchasers and promote Class Vehicle sales.

100.    Additional information supporting allegations of fraud and fraudulent conduct is in the control of the Defendants.  This information includes but is not limited to technical root cause analyses, communications with Class Vehicle owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their Class Vehicles' batteries were not performing as represented.

101.    Material information fraudulently concealed and/or actively suppressed by the

27

Defendants includes but is not limited to diminished Class Vehicle battery performance, contrary to representations, described in the preceding paragraphs.

102.   Material information was fraudulently concealed and/or actively suppressed in order to sell Class Vehicles to uninformed consumers (including the proposed class representative and  class members) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance and durability.   In fact, Class Vehicles actually contained a known battery vulnerability to cold temperatures that would severely affect the performance of the vehicle.

103.   The Defendants (and particularly the sales and marketing executives at BMW NA) advertised and otherwise created the reasonable expectation that the Class Vehicles' electric range consistently achieved optimum performance irrespective of ambient temperatures.   Material information was fraudulently concealed and/or actively suppressed in order to protect the Defendants' (and Defendants' authorized dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit BMW's brand disparagement.

104.   Defendants had a duty to disclose to Class Vehicle owners that range would be significantly diminished in cold weather, and that the window sticker, owner's manual and/or Service and Warranty Information pamphlet set forth the wrong range and otherwise failed to give notice that operating Class Vehicles in cold weather would significantly reduce vehicle range.

105.   This duty arose because the Defendants knew that there were inaccuracies in the advertising, window stickers, owner's manual and/or Service and Warranty Information pamphlet that affected vehicle operation while Class Vehicle owners were not, and could not reasonably be, cognizant of cold weather effects on Class Vehicle batteries, and their intendant dangers.

106.    Defendants continuously and affirmatively concealed the actual characteristics of Class Vehicles from the proposed class representative and other purchasers.  Defendants breached their affirmative duty of disclosure to Class Vehicle owners (and particularly to owners who inquired as to the cause of Class Vehicle diminished performance in cold ambient temperatures).

107.    Defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed, both pre-sale and post-sale, the existence of significantly diminished battery performance in cold weather in Class Vehicles and omissions in accompanying owner's manual and Warranty and Maintenance pamphlet.

108.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable under Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were unable to perform as advertised in cold weather, the inability of Class Vehicle purchasers to bargain with the Defendants to increase durational warranties, their lack of knowledge of the battery vulnerability to cold temperatures, their lack of meaningful alternatives, disparity in sophistication of the parties, and absence of effective warranty competition.[9]

---

[9]   New Jersey Uniform Commercial Code § 2-302 (NJ Stat. Ann. § 12A:2-302) states in pertinent part:

(1)   If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2)   When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

109.     Purchasers of Class Vehicles reasonably expect vehicles to function well in excess of the Class Vehicles' durational warranties before requiring extensive expensive repairs.  This is particularly true where the purchasers of Class Vehicles were led to believe by the Defendants' representations and typical consumer expectations in a commercial context that the vehicles' range would not be adversely affected by cold ambient temperatures.

110.     The proposed class representative and class members had an absence of any meaningful choice in the purchase of Class Vehicles and the contractual terms were unreasonably favorable to the Defendants since the Defendants were fully aware of cold weather vulnerability in the Class Vehicles that substantially reduced the represented and warranted range of the vehicle. The proposed class representative and class members were unaware of the cold weather vulnerability in the Class Vehicles at the time of purchase.  The bargaining position of the Defendants for the sale of Class Vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including the proposed class representative and class members. This is because the Defendants knew there were cold temperature vulnerabilities in Class Vehicles affecting the range and operating costs.

111.     The Defendants' conduct renders the Class Vehicle purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

112.     The durational limitation of the express warranties accompanying the Class Vehicles is unreasonable and unconscionable since the Defendants actively concealed known vehicle battery vulnerability to cold temperatures and issued incorrect driving range guidance.  The proposed class representatives and class members had no notice of or ability to detect the battery

issue.  In addition, Defendants and their agents continually represented to Plaintiff that the battery was not the cause of the substantially reduced mileage.

113.    Defendants engaged in unconscionable fraudulent commercial practices and attempted to conceal the unattainable driving range in cold temperatures.

114.    Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle diminished performance in cold ambient temperatures.

115.    Defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies.   The Defendants' upper level management orchestrated this wrongful conduct.

116.    The proposed class representative and class members operated and maintained their Class Vehicles in conformity with the respective owner's manual and Service and Warranty Information pamphlet and provided the requisite notice to the Defendants' authorized agents for warranty repair after their Class Vehicles failed to achieve the advertised range.

117.    Class Vehicle owners have sustained an ascertainable financial loss, including but not limited to decreased utility of their vehicles because of range limitations in cold weather and increased fuel costs for REx models.   Individuals who own or have owned Class Vehicles also sustained diminution of the resale value of their Class Vehicles since knowledge of problems with Class Vehicles became public information after the time of their purchase.

118.    The proposed class representative and class members have not received the benefit of their bargain concerning their respective purchase of Class Vehicles.

119.    Defendants created an over-all misleading impression through their failure to disclose material information concerning the fact that Class Vehicles' range cannot perform as advertised in cold ambient temperatures and were accompanied by an owner's manual and Service

and Warranty Information pamphlet that failed to adequately advise owners about the adverse effects cold ambient temperatures have on Class Vehicle performance.  The proposed class representative and class members were deceived by the Defendants' conduct as described in this complaint with respect to their purchase of Class Vehicles.

120.    The Defendants violated the consumer protection laws of New Jersey together with all other state consumer protection laws with their unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to the proposed class representative and class members.

121.    If the proposed class representative and class members had been made aware of the cold temperature vulnerabilities in their respective Class Vehicles and the attendant ramifications of value, durability, maintenance expenses, safety and care, they would not have purchased the Class Vehicles or would have paid less for their vehicles since class members were led to believe that they were purchasing a vehicle that was generally impervious to cold weather and were not fully informed of the true characteristics and attributes of Class Vehicles.

122.    As a direct result of these knowing omissions, the proposed class representative and class members purchased Class Vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented.  These misrepresentations diminish the value and cost of vehicle ownership.

123.    The wrongful conduct of the Defendants in violation of the consumer protection laws of New Jersey together with all other state consumer protection laws occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by the Defendants' conduct.

32

**Class Action Allegations**

124.    The proposed class representative brings this action pursuant to Fed. R. Civ. P.

23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the class and state

subclasses (or any other class authorized by the Court) defined as follows:

> **Nationwide Class**: All owners and former owners, lessees and former lessees of
> Class Vehicles who purchased or leased their vehicles in the United States and who
> sustained monetary loss and/or diminution of Class Vehicle value resulting from the
> Defendants' conduct as described in this complaint (hereinafter "class members" or
> "the Nationwide Class").   Excluded from the proposed class are the Defendants
> together with their officers, directors, employees, assigns, and successors, the Court,
> Court staff, the Defendants' counsel and all respective immediate family members
> of the excluded persons and entities described above.   Also excluded from the
> proposed class are any and all claims involving personal injury.

> **New Jersey Class:** All owners and former owners, lessees and former lessees of
> Class Vehicles who purchased or leased their Class Vehicles in New Jersey, and
> sustained monetary loss and/or diminution of Class Vehicle value resulting from the
> Defendants' conduct as described in this complaint (hereinafter "proposed New
> Jersey class members" or "the New Jersey Subclass").   Excluded from the proposed
> class are the Defendants together with their officers, directors, employees, assigns,
> and successors, the Court, Court staff, defendant's counsel and all respective
> immediate family members of the excluded entities described above.  Also excluded
> from the proposed class are any and all claims involving personal injury.[10]

125.    Plaintiff reserves the right to amend the definitions of the classes and add subclasses

if discovery and further investigation reveal that the classes should be narrowed, expanded, or

otherwise modified.

**Numerosity of the Class: Fed. R. Civ. P. 23(a)(1)**

126.    The class is so numerous that individual joinder of all potential members is

impracticable under Fed. R. Civ. P. 19 or 20.  It is estimated there are in excess of approximately

---

[10]   Plaintiff reserves the right to amend the definitions of the classes and add subclasses if
discovery and further investigation reveal that the classes should be narrowed, expanded or
otherwise modified.

50,000 Class Vehicles imported into or constructed in the United States.  Although the number, location and identity of all class members cannot be presently ascertained, this information is obtainable through discovery from the Defendants.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**

127.    Common questions of law and fact exist as to all members of the class and predominate any and all issues of law and fact affecting individual members of the class.  These issues include but are not limited to:

(a) Whether Class Vehicle batteries as designed or manufactured, perform with significant reductions of range in excess of 30% in cold weather;

(b) Whether Class Vehicles were sold with an owner's manual and/or Service and Warranty Information pamphlet and other materials that incorporated incorrect battery range;

(c) Whether the Defendants breached their express warranties that Class Vehicles could not perform as represented in cold weather conditions;

(d) Whether the Defendants breached their implied warranties in that Class Vehicles materially could not perform as represented in cold weather conditions due to the battery design and manufacture, including workmanship and materials;

(e) Whether the Defendants intentionally or negligently misrepresented material facts concerning the characteristics of battery performance and expected mileage range;

(f) Whether the Defendants committed unfair and deceptive business act practices by failing to inform owners of Class Vehicles prior to purchase and/or during the post-sale express warranty period that battery range in cold weather is significantly less than when Class Vehicles are operated at optimum temperatures;

(g) Whether the Defendants were unjustly enriched by their warranty breaches and deceptive and/or unfair conduct described in this complaint;

(h) Whether class members are entitled to monetary damages and injunctive relief pursuant to Rule 23(b)(2);

(i) Whether the Court should establish a constructive trust funded by the benefits conferred upon the Defendants by their wrongful and unlawful conduct;

(j) Whether class members are able to economically afford individual litigation against Defendants;

(k) Whether Defendants owed a duty of care to Plaintiff and members of the class;

(l) Whether Defendants were negligent or grossly negligent in misrepresenting that the mileage range of Class Vehicles was unaffected by cold weather;

(m) Whether Defendants were negligent or grossly negligent in failing to warn in its advertising, marketing, and labeling that the mileage range of Class Vehicles was significantly diminished in cold weather;

(n) Whether Defendants acted to conceal that Class Vehicle battery range is significantly diminished in cold weather;

(o) Whether Defendants' failure to disclose Class Vehicles' diminished battery range in cold weather was unfair, deceptive, fraudulent, or unconscionable;

(p) Whether Defendants' representations and/or omissions in advertising, marketing, and labeling are likely to mislead a reasonable consumer; and,

(q) Whether Defendants knew that its representations and/or omissions in advertising, marketing, and labeling were false, deceptive, or misleading.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3)**

128.    The proposed class representative's claims and defenses are typical of the claims and defenses of class members.  Class claims arise out of ownership or lease of Class Vehicles as defined herein.  There are no defenses to Plaintiff's claims on the part of Defendants that are unique or different from the class.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4)**

129.    The proposed class representative will fairly and adequately protect the interests of the class and subclasses.  The proposed class representative's claims and the class members' claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.  Class counsel have, in the aggregate, over 60 years of experience concentrating in complex automotive products liability, and have been appointed class counsel in other proceedings.  Neither Plaintiff nor his attorneys have any interests that are contrary to or conflicting with the class members.

**Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3)**

130.    Maintenance of a class action in one court is the most economical procedural device to litigate the class vehicle and class engine claims for class vehicle owners and the defendant. Prosecution of separate actions by individual members of the class could create risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class as recognized by Fed. R. Civ. P. 23(b)(1)(A).

131.    Prosecution of separate actions by individual members of the class could create risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the

adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

132.    There is a substantial likelihood that Defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

133.    Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. Proc. Rule 23(b)(3).

**The Person(s) Responsible for the Failure to Disclose**

134.    The proposed class representative and class members are entitled to the reasonable inference that the Defendants' sales, marketing, engineering and warranty departments and their executives were involved in the omissions and misrepresentations.

**The Context of the Omissions and the Manner in which they Misled**

135.    Material information was fraudulently concealed and/or actively suppressed in order to sell Class vehicles to uninformed consumers (including the proposed class representative and class members) premised on affirmations and representations as described in this complaint.

136.    If the proposed class representative and class members had been informed that the range of Class Vehicle would be significantly diminished in winter weather, they would not have purchased their respective Class Vehicles or would have paid substantially less.  If the class representative and class members had been made aware of the cold weather vulnerabilities in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution

in value, future cost of fuel, repairs, durability, alternative transportation, and care, they would not have purchased the Class Vehicles since each class member believed they were purchasing vehicles which substantially conformed to the advertised representations of mileage per charge.

**What the Defendant Obtained through the Fraud**

137.    Material information concerning Class Vehicles was concealed and/or actively suppressed in order to protect the Defendants' corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity and limit brand disparagement.  Purchasers believed they were obtaining vehicles as having different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their class vehicles.  The Defendants had a uniform policy of not properly disclosing Class Vehicle battery's cold weather mileage per charge performance or accurate driving range in order to promote sales and increase profits as described in this complaint.

138.    As a proximate and direct result of the Defendants' unfair and deceptive business trade practices, the proposed class representative and class members purchased Class Vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

**COUNT I**
**BREACH OF UNIFORM COMMERCIAL CODE § 2-313: EXPRESS WARRANTY BY THE DEFENDANT RESULTING IN FINANCIAL HARM**
(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Subclass)

139.    Proposed class representative Hurst and class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

140.     The Defendants are merchants with respect to passenger motor vehicles.  Class Vehicles are goods within the meaning of the Uniform Commercial Code as adopted by New Jersey and all other adopting states.

141.     The Defendants made uniform express warranties in the window sticker and advertising that the Class Vehicles would attain certain ranges.  While some degradation might be expected, the actual mileage range attainable in the winter months in New Jersey and other cold weather states is substantially less to the degree that the representations made are untrue in material respects.

142.     Any Class Vehicle range disclaimers in BMW's advertising, is generic, vague, not in conspicuous typeface and, in fact, is in diminished typeface and insufficient as a matter of law.

143.     The proposed class representative and class members were not presented with an opportunity to review (let alone bargain for) the warranted provisions concerning battery driving range at the time of purchase of their Class Vehicles and were unaware of the cold temperature vulnerabilities in the battery of Class Vehicles that made the respective bargaining position of the parties unequal at the time of vehicle purchase.

144.     Defendants received adequate notice of their breach of their express warranties and failed to cure the warranty breaches.  The proposed class representative and class members reported to Defendants the problems with and failings of the battery in their Class Vehicles and requested that Defendants cure and/or repair and/or replace the underperforming battery.

145.     The proposed class representative and class members complied with all maintenance and service recommendations for their respective Class Vehicles.

146.    Because of the significant loss of range in cold weather, Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

147.    The proposed class representative and class members could not have reasonably discovered the defective condition of their Class Vehicle batteries prior to failure.

148.    The express warranty remedy set out in the warranty provisions accompanying Class Vehicles fails of its essential purpose under Uniform Commercial Code § 2-719(2) and the limitation of consequential damages is unconscionable under § 2-719(3) because of the conduct of the defendant described, *supra*.

149.    The proposed class representative and class members relied on express warranties made by the Defendants concerning Class Vehicles and sustained financial injury resulting from the breach of those warranties by the Defendants including loss of vehicle utility and higher fuel expenses for REx models.

150.    The proposed class representative and class members could not have reasonably discovered the defective condition of the Class Vehicles.  The Defendants' breach of their express warranties was the direct and proximate cause of the proposed class members' financial harm.

151.    Wherefore, proposed class representative and class members demand judgment against Defendants for multiple damages, interest, costs and attorneys' fees.

### COUNT II
### BREACH OF UNIFORM COMMERCIAL CODE § 2-314: IMPLIED WARRANTY OF MERCHANTABILITY BY THE DEFENDANT
(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Subclass)

152.    Proposed class representative Hurst and class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

153.    The Defendants are merchants with respect to passenger motor vehicles.  Class Vehicles are goods within the meaning of the Uniform Commercial Code as adopted by New Jersey and all other adopting states.

154.    The Defendants failed to provide legally binding written notice to proposed class representatives and other class vehicle purchasers of implied warranty exclusions at time of purchase because the warranty exclusion failed to mention merchantability and was not conspicuous within the meaning of § 2-316 and was therefore ineffective as a matter of law.

155.    The Defendants impliedly warranted to the general public, owners and lessees of Class Vehicles that the Class Vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used including that the driving range would substantially conform to the implied warranty.

156.    As manufacturers of consumer goods, the Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of implied warranty.

157.    To the extent privity of contract is required for purposes of the application of implied warranty, the proposed class representative and class members are third-party beneficiaries to a contract implemented by the Defendants that creates an implied warranty of merchantability.

158.    The Defendants breached their implied warranties in that Class Vehicles were defective with respect to battery performance in cold weather as described in this complaint and were unfit for the ordinary purposes for which passenger vehicles are used because of those defects causing diminished driving range and utility of Class Vehicles.

159.    The proposed class representative and class members relied on implied warranties of merchantability made by the Defendants concerning Class Vehicles in choosing to purchase their respective Class Vehicles and sustained an ascertainable financial injury resulting from the breach of those warranties by the Defendants.

160.    The Defendants received adequate notice of their breach of the implied warranty of merchantability through proposed class representative and class members' requests for repair or replacement.  In the alternative, Class Vehicle owners were not required to issue notice of the warranty breach to the Defendant and any lack of notice of warranty breach did not result in any prejudice to the Defendant.  The Defendant declined to offer the proposed Class representative an adequate remedy for his Class Vehicle.

161.    Even though the proposed Class representative and Class members complied with Class Vehicle battery maintenance recommendations for their respective Class Vehicles, their respective Class Vehicle batteries prematurely failed because of vulnerabilities to cold ambient temperatures.

162.    The proposed class representative and class members reasonably relied upon the expertise, skill, judgment and knowledge of the Defendants and upon their implied warranty that Class Vehicles were of merchantable quality and fit for their intended use.  Class Vehicles did not conform to the Defendants' implied representations or warranties because vulnerabilities in the battery caused Class Vehicles to be less reliable and more expensive to maintain than competitor vehicles.

163.    Wherefore, the proposed class representative and proposed class members demand judgment against Defendants including multiple damages, interest, costs and attorneys' fees.

42

### COUNT III
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2310(d)(1(A)
(On Behalf of the Nationwide Class, or Alternatively, the New Jersey Subclass)

164.    Proposed class representative Hurst and class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

165.    This claim is brought as a state law claim under 15 U.S.C. § 2310(d)(1)(A) and is before this Court as a supplemental state court claim for each of the state subclasses pursuant to diversity jurisdiction under CAFA.

166.    The proposed class representative and class members are consumers within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

167.    Class Vehicles are consumer products within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

168.    The Defendants are suppliers and/or warrantors within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

169.    The Defendants' express warranties are written warranties within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  Class Vehicle implied warranties created by operation of state law are incorporated into the Magnuson-Moss Warranty Act as modified by § 2308.

170.    The Defendants breached the express and implied warranties accompanying Class Vehicles as described in this complaint.

171.    The Magnuson-Moss Warranty Act provides a claim for any consumer  who is damaged by the failure of a warrantor to comply with a written or implied  warranty.

172.    The Defendants' breach of their express and implied warranties was the direct and

proximate cause of the proposed class representative and proposed class members' financial harm as more fully set out in the preceding warranty counts, and constitutes a violation of the Magnuson-Moss Warranty Act.

173.    Affording Defendants a reasonable opportunity to cure their breach of written warranties for Class Vehicles would be unnecessary and futile.  The proposed class representative and class members have already attempted to secure coverage for their battery-related repairs without success.

174.    At the time of sale or lease of each Class Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted (e.g. diminished range and/or capacity loss), but nonetheless failed to rectify the situation and/or disclose the cold temperature vulnerability as described in this complaint.  Under the circumstances, the remedies available under any informal settlement  procedure would be inadequate and any requirement that Class Vehicles resort to an informal dispute resolution procedure and/or afford the Defendants a reasonable  opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

175.    The proposed class representative and class members would suffer  economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.

176.    Wherefore, proposed class representative and proposed class members demand judgment against the Defendants including multiple monetary damages, interest, costs and attorney's fees.

44

**COUNT IV**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA")**
**N.J. STAT. ANN.  §§ 56:8-2 *ET SEQ.*[11]**
(On Behalf of Plaintiff Hurst, the Nationwide Class and the New Jersey Subclass**)**

177.    Proposed class representative Hurst incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

178.    Proposed class representative Hurst asserts this count on behalf of himself and proposed New Jersey Subclass members.

179.    The NJCFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . " N.J. STAT. ANN. § 56:8-2.

180.    Proposed Class representative Hurst and members of the nationwide class and/or the New Jersey subclass are consumers/persons who purchased or leased class vehicles for personal, family, or household use.  The Defendants are persons engaged in trade or commerce with respect to merchandise within the context of NJCFA.

181.    In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that have batteries with materially reduced range vulnerabilities to cold weather described in this complaint and present an undisclosed safety risk to drivers and occupants of the Class Vehicles.

---

[11] Counsel for the plaintiffs will serve the New Jersey Attorney General with a copy of this complaint in accordance with N.J. STAT. ANN. § 56:8-20.

Defendants misrepresented the standard, quality or grade of the Class Vehicles that were sold or leased with known cold weather vulnerabilities and/or failed to disclose the materially reduced range the Class Vehicles' battery as described in this complaint and corresponding safety risk in violation of the NJCFA. The Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to proposed class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass the Class Vehicle battery range and concealed that vehicle range would decrease significantly in ambient cold temperatures.

182. Defendants' misrepresentations and fraudulent omissions were material to proposed Class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass. When proposed class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass purchased or leased their Class Vehicles, they reasonably relied on the affirmative representations that the Class Vehicles' battery would perform as advertised. Had Defendants disclosed that the batteries were prone to substantial cold weather performance issues with driving range, Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles. Had Defendants disclosed that the Class Vehicle batteries would lose capacity and/or range before the warranty period expiration, Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass would have demanded repair or replacement during the warranty periods at no cost to proposed class representative and members of the proposed Nationwide Class and/or New Jersey Subclass as provided for in Defendants' warranties.

183. Defendants knowingly concealed, suppressed and/or omitted to disclose the existence of the Class Vehicle battery cold temperature performance vulnerability and safety risk in the Class Vehicles at the time of sale or lease and at all relevant times thereafter. The Defendants

also fraudulently, intentionally, negligently and/or recklessly misrepresented to proposed class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass the characteristics of Class Vehicle battery with respect to material, manufacture, durability, longevity, maintenance and operating costs.  The Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, manufacture, safety, durability, reliability and performance.

184.    Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles incorporating the undisclosed latent battery vulnerability to cold temperatures and corresponding safety risk.

185.    Defendants' prior knowledge is demonstrated by the facts that:

- Defendants maintain a Warranty Optimization section in their Warranty Department at BMW NA's headquarters in New Jersey, which contemporaneously tracks warranty data for various parts in the Class Vehicles, including Class Vehicle batteries, to determine failure rates and perform root cause analysis;

- Defendants maintain Warranty Specialists at their U.S. Headquarters in New Jersey who contemporaneously analyze warranty data maintained in BMW NA's intranet database available to personnel at the U.S. Headquarters to identify failure rates and trends;

- Defendants also maintain a Launch Viability Function Integration section in New Jersey whose responsibilities in the U.S. include extensive pre-launch testing of vehicles; organizing and leading vehicle test events at multiple test facilities;

- Defendants also maintain a division that includes engineers who inspect and analyze defects and failure as they occur in the field;

- Defendants are required to assiduously track and review complaints filed by owners of Class Vehicles with NHTSA to ensure that any defects requiring a recall are promptly reported to NHTSA within five (5) days; and

- The internal chart set forth *supra* expressly reveals Defendants' prior knowledge and is a documentary admission of such knowledge.

47

186.    Defendants owed a duty to disclose the Class Vehicle cold weather battery vulnerability described in this complaint and its corresponding safety risk to Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass because Defendants possessed superior and exclusive knowledge concerning the decreased range and performance and the risks associated with vehicle operation in cold ambient temperatures.  Rather than disclose the effects of cold weather on Class Vehicle batteries, Defendants intentionally concealed the issue with the intent to mislead Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass in order to sell additional Class Vehicles and wrongfully transfer the cost of mitigating the reduced utility of Class Vehicles to Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass.  Defendants actively suppressed the fact that Class Vehicles could not attain their advertised range and performance because of cold ambient temperatures.

187.    Defendants knew that cold temperatures would diminish performance of in Class Vehicles would cause significantly decreased battery driving range.   In fact, Defendants intentionally distributed a chart showing the significant degradation of mileage in cold weather. Further, Defendant knew that such loss of range would cause Class Vehicles to become stranded or inoperable, putting vehicle operators, passengers, and other motorists at risk for injury, or at minimum, appalling inconvenience.   The Defendants actively suppressed the fact that Class Vehicles were prematurely failing because of exposure to cold weather.  Although the Defendants knew the effects of cold weather on Class Vehicles, the Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

188.    Had proposed class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass known about the cold weather battery vulnerability described in this complaint at the time of purchase, including the safety hazard, inconvenience and loss of

utility posed by the vulnerability, they would not have bought the Class Vehicles or would have paid much less for them.

189.    As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass have suffered and continue to suffer harm by the threat of vehicle range loss and either not being able to operate their vehicles or being stranded.  Plaintiff Hurst and members of the New Jersey Subclass have also suffered the ascertainable loss of the diminished value of their vehicles.  In addition, proposed class representative Hurst and the class were required to spend additional money on gasoline for necessary use of the extender range engine with the electric battery lost its charge prematurely.  The battery failure was directly and proximately caused by the Defendants' violation of the NJCFA.

190.    As a further result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, proposed class representatives Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial as allowed by N.J. STAT. ANN. § 56:8-19.  Plaintiff Hurst and members of the New Jersey Subclass also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA.  *See* N.J. STAT. ANN. § 56:8-19.

191.    The Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances including proposed class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass were caused to suffer ascertainable damages by expending sums of money in purchasing their Class Vehicles which could not operate

as advertised in cold weather. As reasonable consumers, proposed class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass had no reasonable way to know that Class Vehicles contained batteries that could not perform optimally in cold weather. Any reasonable consumer under the circumstances would have relied on the representations of the Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the reliability of batteries in cold ambient temperatures.

192.    The Defendants violated the NJCFA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles were susceptible to massive reductions in range when exposed to cold weather and were accompanied by incorrect range representations.

193.    The Defendants violated the NJCFA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles could not perform as advertised in cold weather and that range, one of the most important aspects of Class Vehicles would be significantly diminished by exposure to cold ambient temperatures.

194.    The Defendants committed unfair and unconscionable commercial practices as described in this complaint. Defendants repeatedly violated the NJCFA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the driving range decrease of Class Vehicles owned by Plaintiff Hurst and proposed subclass members.

195.    As a proximate and direct result of Defendants' unfair and deceptive business trade practices, proposed class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass purchased Class Vehicles and sustained an ascertainable loss and financial harm.

196.    Proposed class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass experienced loss of vehicle utility, diminution of Class Vehicle resale value, increased maintenance costs and incurred other substantial monetary damages and inconvenience.

197.    Wherefore, proposed class representative Hurst and members of the proposed Nationwide Class and/or New Jersey Subclass demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT V
## NEGLIGENT MISREPRESENTATION
(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Subclass)

198.    Proposed class representative Hurst and class members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

199.    Defendants  negligently  and  recklessly  misrepresented  to  proposed  class representative Hurst and class members the characteristics of Class Vehicles with respect to battery performance in cold ambient temperatures.

200.    The proposed class representative and class members reasonably and justifiably relied upon representations made by the Defendants including information in the Class Vehicle window sticker, Defendants' advertising, and Service and Warranty Information pamphlet that incorporated incorrect range statistics and did not account for cold temperature decreases.

201.    As a proximate and direct result of proposed class representative and class members' reliance on the Defendants' negligent and reckless misrepresentations, proposed class representative and class members sustained monetary damages as described in this complaint.

202.    Wherefore, proposed class representative and class members demand judgment against defendant for multiple damages, interest, costs and attorneys' fees.

**COUNT VI**
**UNJUST ENRICHMENT**
(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Subclass)

203.    Proposed class representative Hurst and class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

204.    The Defendants breached their express and implied warranties in that Class Vehicles were accompanied by a window sticker, an owner's manual and Service and Warranty Information pamphlet that incorporated inaccurate vehicle range and failed to adequately apprise owners of the range-limiting effect of cold weather exposure on Class Vehicle batteries.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of severely limited range in cold weather and an owner's manual and Service and Warranty Information pamphlet that failed to adequately apprise vehicle owners of the effects of cold weather on Class Vehicle performance.

205.    The Defendants benefited financially from their breaches of warranty, misrepresentations and fraud as described in this complaint.  Defendants denied legitimate Class Vehicle battery warranty claims and obtained further unwarranted financial gain.

206.    The proposed class representative and class members sustained monetary damages as described in this complaint.

207.    Allowing the Defendants to retain their monetary enrichment from their wrongful and unlawful acts would be unjust and inequitable.

208.    The proposed class representative and class members request that the Defendants disgorge their profits from their wrongful and unlawful conduct and that the Court establish a

constructive trust funded by the benefits conferred upon the Defendants as a result of their wrongful conduct.  The proposed class representative and class members should be designated beneficiaries of the trust and obtain restitution for their out of pocket expenses caused by the Defendants' conduct.

209.    Wherefore, the proposed class representative and class members demand judgment against defendant for multiple damages, interest, costs and attorneys' fees.

## RELIEF DEMANDED

Wherefore, proposed class representative Hurst requests:

(a) An Order pursuant to Fed. R. Civ. P. 23(c) certifying the class and/or subclass with such modifications, if any, to the proposed certification as required by the Court for the efficient and equitable administration of justice in this proceeding;

(b) An Order appointing the proposed class representative as representative of the class and designating the law firms of Kantrowitz, Goldhamer & Graifman, P.C., and Thomas P. Sobran P.C., as counsel for the class pursuant to Fed. R. Civ. P. 23(g);

(c) Judgment for the proposed class representative and class members against the Defendants on all issues and counts;

(d) Actual, compensatory and statutory damages for proposed class representative Hurst and class members, including but not limited to multiple damages, together with interest, prejudgment interest, costs and attorneys' fees;

(e) Restitution for all battery repairs and additional fuel costs incurred by the proposed class representative and proposed class members resulting from the Class Vehicle batteries exposed to cold weather that consequently suffered diminished range;

(f) Restitution of incidental expenses incurred by the proposed class representative and class members, including but not limited to rental vehicles and other substitute transportation; and,

(g) Any other relief deemed necessary by this Court.

## REQUEST FOR JURY TRIAL

The proposed class representative and class members request trial by jury on all issues and counts.

Dated: June 15, 2022

*/s/ Gary S. Graifman*
Gary S. Graifman, Esq.
Daniel C. Edelman, Esq.
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
135 Chestnut Ridge Road, suite 200
Montvale, NJ 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com
dedelman@kgglaw.com


*/s/ Thomas P. Sobran*
Thomas P. Sobran, Esq.
**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, MA 02043
(781) 741-6075
(to be admitted *pro hac vice*)

***Attorneys for Plaintiffs***