<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN HURST, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA LLC,<br><br>　　　　　　　　　Defendant. | Civil Action No. 22-3928 (SDW) (AME)<br><br>**OPINION**<br><br>July 26, 2023 |

**WIGENTON**, District Judge.

Before this Court is Defendant BMW of North America, LLC's ("Defendant" or "BMW NA") Motion for Judgment on the Pleadings (D.E. 21) of Brian Hurst's ("Plaintiff") Class Action Complaint (D.E. 1 ("Compl.")), pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332(d)(2) and 1391, respectively. For the reasons stated herein, Defendant's motion is **GRANTED**.

I. <u>BACKGROUND AND PROCEDURAL HISTORY</u>

　　A.　　**Plaintiff's Factual Allegations[1]**

Plaintiff is a New Jersey resident. (Compl. ¶ 29.) Defendant is a subsidiary of the automobile manufacturer Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), incorporated in Delaware, with a principal place of business in New Jersey from where it conducts

---

[1] For purposes of the present Motion, the facts are drawn from the Complaint and accepted as true. *See Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017).

1

United States activities including marketing, warranty operations, and consumer relations. (*Id.* ¶ 30.)

In October 2018, Plaintiff purchased a certified pre-owned 2015 BMW i3 with Range Extender ("i3 REx") from an authorized New Jersey BMW dealer. (*Id.* ¶¶ 21, 29.) At the time of purchase, Plaintiff's i3 REx (the "Vehicle") was still under the manufacturer's new vehicle warranty and it had 23,261 miles on it. (*Id.* ¶¶ 21, 29.) The BMW i3 REx is an electric vehicle equipped with a gasoline engine that extends the driving range beyond what can be reached with an electric battery alone, and it costs $3850 more than the purely electric i3. (*Id.* ¶ 18–19.) The i3 REx has a lower all-electric range than a purely electric i3, because of the added weight of this extra gasoline engine. (*Id.* ¶ 18.)

In advertising the i3 REx and other i3 model electric vehicles (collectively, the "Class Vehicles"), Defendant did not disclose, concealed, or misrepresented, the Class Vehicles' real-world cold weather ranges, and only provided vehicle range figures from testing in optimal conditions. (*See id.* ¶¶ 2, 6–7, 10–11, 20, 22–23, 54.) Plaintiff purchased the Vehicle in large part because of Defendant's advertisements stating that the i3 REx had a range of 80 miles on battery only and 150 miles with the range extender. (*Id.* ¶¶ 9, 22.) A window sticker on the Vehicle similarly indicated that its electric battery mileage range was 72 miles. (*Id.* ¶ 7.) However, Plaintiff was only able to travel 39 miles on a fully charged battery in winter months. (*Id.*) The Vehicle's dashboard display indicated an electric range of less than 50 miles during cold weather, even after it was fully charged, and indicated a decline of 10 more miles after driving 1 to 2 miles. (*Id.* ¶ 37.)

Defendant misrepresented the Vehicle and Class Vehicles' driving ranges in the following advertisements and printed materials (collectively, the "advertisements"). First, the window

sticker indicated that Plaintiff's Vehicle had a range of 72 miles on electric alone. (*Id*. ¶ 7.) Second, a page on the Nalley BMW dealership's website, which Plaintiff viewed and relied upon prior to buying his vehicle, states that the range of a BMW i3 with Range Extender is 150 miles. (*Id*. ¶¶ 9, 12.) Third, the i3 Owner's Manual stated that the range "can be abruptly reduced" by, inter alia, "climate and terrain conditions" without disclosing the dramatic reduction in range caused by cold weather—a reduction of more than 50% in the case of Plaintiff's Vehicle. (*Id*. ¶¶ 52, 54–55.) Fourth, a Service and Warranty Information pamphlet set forth the wrong range and failed to inform buyers that cold weather would significantly reduce the range. (*Id*. ¶¶ 104, 119.) Fifth, in two promotional YouTube videos from 2011 and 2013, BMW representatives boasted that the range extender doubled the range of the i3 and that the range was 100 miles. (*Id*. ¶¶ 15–17.) In the 2011 video, the speaker was a Manager of Electric Vehicle Operations and Strategy for BMW NA, and in the 2013 video, the speaker was the Head of Electric Vehicle Operations and Strategy for BMW NA. (*Id*.)

In addition to these advertisements, several of Defendant's sales representatives directly reassured Plaintiff that cold weather does not significantly, if at all, decrease the electric range of the i3. (*Id*. ¶¶ 22–23, 89.) Plaintiff contacted various BMW dealerships around the country to inquire about how outdoor temperatures affected the i3, and several representatives responded assuring him that cold weather does not affect the range, while others stated that it affects performance "a bit" but not significantly. (*Id*. ¶¶ 59–60.)

Defendant knew prior to the date it introduced Class Vehicles into the U.S. market that cold weather severely diminishes the Class Vehicles' driving range and that the Class Vehicles would not attain the ranges indicated in advertising or promotional material. (*Id*. ¶¶ 34, 47, 57, 85.) Defendant maintains cold weather testing sites in Sweden and elsewhere to test the effects of cold

3

weather on its vehicles' performance. (*Id*. ¶ 34.) Defendant also carefully monitors online forums in which customers have complained about Class Vehicles' reduced range in winter. (*Id*. ¶ 58, 85.) Moreover, Defendant distributed internally—but did not disclose to consumers—a dealer training chart titled "Real-World Electric Range Experience" which shows that cold weather diminishes driving ranges for electric and hybrid vehicles. (*Id*. ¶ 60.)

Plaintiff notified Defendant of the significantly lower than advertised range and was told to bring his vehicle to an authorized service center for diagnostic testing, which Plaintiff did on or about February 18, 2021. (*Id*. ¶¶ 40–41.) The BMW technician fully charged the car batteries at room temperature, but the vehicle still indicated a range of only 55 miles. (*Id*. ¶ 41.) The technician informed Plaintiff that there were no flaws found in his battery during testing, but that the cold weather reduced the Vehicle's range and that storing the car outside in 15–20 degree weather would result in the range dropping down to almost nothing. (*Id*. ¶¶ 41–42.) Thus, Plaintiff learned of the false representations giving rise to his claims in February 2021. (*Id*. ¶ 42.)

Plaintiff would not have purchased the Vehicle, or would have paid less for it, had he known that cold weather severely decreases its driving range. (*Id*. ¶ 23.) Because the Vehicle has a significantly shorter ranger than Defendant advertised, Plaintiff has used the car only half as much as he intended to, and he was unable to use the car for its intended purpose—his wife's commute of approximately 50 miles round trip. (*Id*. ¶¶ 36–39.) He has also paid more for gasoline, and his car has less resale value. (*Id*. ¶¶ 8, 23, 39, 117.)

**B.      Procedural History**

Plaintiff filed this putative class action on June 15, 2022 on behalf of himself and similarly situated individuals who have owned or leased a Class Vehicle. (Compl. ¶¶ 1, 124). The Complaint asserts the following claims: breach of express warranties under UCC § 2-313 (Count

4

I); breach of an implied warranty of merchantability under UCC § 2-314 (Count II); employment of unconscionable commercial practices in violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-2 *et seq.* (Count IV); negligent misrepresentation (Count V); and unjust enrichment (Count VI). (*See id.* ¶¶ 139–63, 177–209).[2] Defendant filed the instant motion for judgment on the pleadings on December 27, 2022, along with a request for judicial notice, and the parties have completed briefing. (D.E. 21, 21-2, 26, 31.) On April 26, 2023, Defendant filed a notice of supplemental authority to which Plaintiff has responded. (D.E. 34, 35.)

## II.  LEGAL STANDARD

In accordance with Rule 12(c), "[a] motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010); *see also Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). In considering a defendant's motion for judgment on the pleadings, this Court "must accept all of the allegations in [the complaint] as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017). In its analysis, this Court may rely only on the pleadings and "document[s] integral to or explicitly relied upon in the complaint." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (quotation marks and emphasis omitted); *see Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Judgment on the pleadings may only be granted if "the movant clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).

---

[2] On September 29, 2022, Plaintiff filed notices voluntarily dismissing Count III of the Complaint and all claims against a second defendant, BMW AG. (D.E. 14, 15.)

An adequate complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim for relief must be "plausible" and a complaint will not survive a motion to dismiss if the "well-pleaded facts do not permit the court to infer more than the mere possibility" of defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (noting that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief"). Insofar as a complaint alleges fraud or misrepresentation, it "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations . . . with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quotation marks omitted).

### III. DISCUSSION

#### A. Claims based on the Window Sticker are Preempted

Plaintiff asserts in Counts I, V, and VI that Defendant breached an express warranty created in part by the window sticker, negligently misrepresented Class Vehicle ranges in the window sticker, and was unjustly enriched in part due to the window sticker's misrepresentations. (Compl. ¶¶ 141, 200, 204.) These claims are expressly and impliedly preempted.

"Preemption is an affirmative defense that the defendant has the burden to prove," so a defendant moving to dismiss under Rule 12(b)(6) based on preemption must show that federal

preemption is "apparent on the face of the complaint and documents relied on in the complaint." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quotation marks omitted). Preemption is "fundamentally a question of congressional intent." *English v. General Electric Co.*, 496 U.S. 72, 78–79 (1990). "[F]ederal regulations have no less preemptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

1. <u>Applicable Statutes and Regulations</u>

New vehicle fuel economy and driving range testing and disclosure is governed by the Energy Policy and Conservation Act of 1975 ("EPCA") and by regulations promulgated by federal agencies including the Environmental Protection Agency ("EPA"). *See* 49 U.S.C. §§ 32904, 32908; *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 855–58 (6th Cir. 2023). EPA regulations dictate how car manufacturers must calculate fuel economy and driving range. *See* 40 C.F.R. § 600.210-12. The EPCA requires that manufacturers attach a label (hereinafter, "window sticker"), on each car with specified information including the car's fuel economy and driving range as calculated under the EPA's testing methods. *See* 49 U.S.C. § 32908(b); 40 C.F.R. § 600.302-12. EPA regulations also mandate that the window sticker include the statement, "Actual results will vary for many reasons, including driving conditions and how you drive and maintain your vehicle." 40 C.F.R. § 600.302-12(b)(4).

Federal law, regulations, and other publicly available information make clear that these figures are estimates, that actual driving range will vary based on a multitude of factors including climate and weather, and that the range listed on a window sticker does not guarantee performance.[3] The statute explicitly states that "[a] disclosure about fuel economy or estimated

---

[3] *See* 49 U.S.C. § 32908(d); 71 Fed. Reg. 77872, 77874 (Dec. 27, 2006) (emphasizing that "fuel economy varies from driver to driver for a wide variety of reasons, such as . . . climates, . . . [and] weather," and that it is therefore "impossible to design a 'perfect' fuel economy test that will

7

annual fuel costs under this section does not establish a warranty under the law of the United States of a State." 49 U.S.C. § 32908(d). These fuel economy and range numbers are intended to be helpful guides for consumers to compare fuel economy across different vehicles. *See* 71 Fed. Reg. 77872, 77874 (Dec. 27, 2006); 76 Fed. Reg. 39478, 39505 (Jul. 6, 2011).

2. Express Preemption

"Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution[,] are invalid." *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (quotation marks omitted). Here, Plaintiff's warranty claim in Count I is expressly preempted insofar as it is based on the window sticker, because federal law states that this mandatory sticker "does not establish a warranty" under federal or state law. 49 U.S.C. § 32908(d). Plaintiff also concedes that the window sticker on his car "incorporated the mandated EPA range disclaimer" stating that actual results will vary, and he does not contend that the window sticker on his car did not meet federal requirements. 40 C.F.R. § 600.302-12(b)(4). (D.E. 26 at 10 n.4; *see* D.E. 21-2 at 3.)

To the extent Plaintiff argues that Defendant was required to list a lower, "real-world" driving range on the window sticker, that claim is also expressly preempted by 49 U.S.C. § 32919, which provides that "a State . . . may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles" or related to "disclosure of fuel economy or fuel operating costs" that differs from federal law. 49 U.S.C. § 32919. (Compl.

---

provide accurate real-world fuel economy estimates for every consumer," and stating that the "EPA estimates are meant to be a general guideline for consumers, particularly to compare the relative fuel economy of one vehicle to another."); *see also Your Mileage Will Vary*, U.S. Environmental Protection Agency, *available at* https://www.fueleconomy.gov/feg/why_differ.shtml (last visited July 26, 2023) (explaining that EPA fuel economy estimates "are a useful tool for comparing the fuel economies of different vehicles but may not accurately predict the average [range or mileage] you will get").

8

¶¶ 9, 20.) Plaintiff's vehicle is covered by 49 U.S.C. § 32908, so this preemption provision applies in this case to bar any claim that New Jersey law requires listing a different range on the window sticker than the one required by federal law. 49 U.S.C. § 32919.

    3.  Conflict Preemption

  Plaintiff's claims based on the window sticker are also preempted under principles of conflict preemption, which is implicated when a state law would "stand as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. KerrMcGee Corp.*, 464 U.S. 238, 248 (1984); *see In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*, 65 F.4th at 862–863 (holding that the EPCA and the EPA's carefully designed testing and disclosure regime preempt similar state-law tort claims). As described above, Congress established a comprehensive federal scheme for consumers to be able to compare vehicles with consistent fuel economy and range information. Requiring Defendant to provide different fuel economy or range estimates on the window sticker based on what Plaintiff considers real-world conditions in New Jersey would defeat this Congressional intent to establish uniform testing and labeling standards nationwide. *See* 49 U.S.C. §§ 32904(a), 32908(g);[4] *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*, 2022 WL 551221, at. *13 (E.D. Mich. Feb. 23, 2022) (concluding that state-law claims based upon Ford's alleged use of EPA mileage estimates in window stickers and advertisements are preempted by federal law); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *27 (S.D.N.Y. Nov. 12, 2015) (finding claims that vehicle window stickers should have stated fuel economy numbers other

---

[4] *See also Learn More about the Fuel Economy Label*, U.S. Environmental Protection Agency, *available at* https://www.epa.gov/greenvehicles/learn-more-about-fuel-economy-label (last visited July 26, 2023) (stating that fuel economy labels are based on testing that provides a "common yardstick for comparing different cars").

9

than those required by the EPCA and EPA regulations were preempted "because they seek to impose a regime above and beyond that required by [federal] regulations").

### B. Plaintiff Fails to State Warranty Claims (Counts I and II)

In Count I, Plaintiff asserts that Defendant breached an express warranty, made in Defendant's advertising, that the Vehicle would attain a certain range. (Compl. ¶ 141.) To state a claim for breach of express warranty under U.C.C. § 2-313, as adopted into New Jersey law, Plaintiff must sufficiently allege: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F.Supp.2d 712, 721 (D.N.J. 2011); *see* N.J. Stat. Ann. § 12A:2-313; *Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 416 A.2d 394, 396 (N.J. 1980).

Here, although Plaintiff alleges some misleading advertisements and statements about BMW i3s, they did not plausibly form part of his "bargain for the product," or decision to purchase his Vehicle, because he fails to allege any specific statement that was made prior to the purchase of his vehicle, by Defendant, and regarding a 2015 BMW i3 REx. The website screenshot is dated 2022, it appears on the website of a third-party dealership, and it does not specify that it applies to a 2015 i3 REx. (Compl. ¶¶ 9, 12.) The two YouTube videos were not created or posted by BMW NA, and they discuss a 2014 BMW i3 and an i3 concept car, not a 2015 BMW i3 REx. (*Id*. ¶¶ 15–17.) The statements by sales representatives at BMW dealerships, while concerning, are not alleged to have occurred until long after Plaintiff bought his used car in 2018; the only date listed in connection with these statements is in February 2021. (*Id*. ¶¶ 22–23, 59–60, 89.)

10

The i3 Owner's Manual and Service and Warranty Information pamphlet are more clearly linked to Defendant and were apparently given to Plaintiff before he purchased his vehicle. However, Plaintiff fails to state a breach-of-warranty claim based on these documents because he has not sufficiently alleged that any warranty was created, nor that there was a breach. Plaintiff does not allege that his Vehicle never reached the ranges indicated in these documents. Moreover, even if he had, Plaintiff admits that the Owner's Manual warned that the range "can be abruptly reduced" by, inter alia, "climate and terrain conditions." (*Id*. ¶¶ 52, 54–55.) As for the pamphlet, Plaintiff does not specify any statement or promise that was made therein—he merely alleges that it set forth the "wrong" or "incorrect" range. (*Id*. ¶¶ 104, 119.) These allegations fall far short of demonstrating that Defendant made an express warranty to Plaintiff at or before the time he purchased his Vehicle. *See* N.J. Stat. Ann. § 12A:2-313.

In Count II, Plaintiff asserts that Defendant breached an implied warranty of merchantability because his Vehicle was "defective with respect to battery performance in cold weather" and "unfit for the ordinary purposes for which passenger vehicles are used because of those defects." (Compl. ¶¶ 155, 158.) Under the U.C.C., as adopted into New Jersey law, a warranty of merchantability is "implied in a contract for [the] sale [of goods] if the seller is a merchant with respect to goods of that kind." N.J. Stat. Ann. § 12A:2-314. This includes an implied warranty that the goods are "fit for the ordinary purposes for which such goods are used." *Id*.; *see In re Ford Motor Co. E-350 Van Products Liability Litig. (No. II)*, 2008 WL 4126264, at *19 (D.N.J. 2008). Merchantability does not mean that the goods are perfect or that they are exactly as the merchant described them to be, but only that they are "reasonably fit for the purpose intended." *Jakubowski v. Minn. Mining & Mfg. Co.,* 199 A.2d 826, 831 (N.J. 1964).

11

Here, although Plaintiff alleges in Count II that his battery was defective and his Vehicle was unfit for use, those allegations are belied by other assertions in the Complaint. Plaintiff alleges that, upon inspection in February 2021, no defects were found with his Vehicle's battery. (Compl. ¶ 43.) Moreover, although he alleges that he was not able to use the car for a specific intended purpose—his wife's commute—his Complaint makes plain that he was able to, and in fact did, use the car for the *ordinary* purpose for which cars are used generally, which is transportation. (*Id*. ¶¶ 21, 36, 38, 41.) N.J. Stat. Ann. § 12A:2-314; *see Sheris v. Nissan N. Am. Inc.,* 2008 WL 2354908, at \*\*5–6 (D.N.J. June 3, 2008) (stating that a vehicle's ordinary purpose is to provide transportation); *In re: Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 2001 WL 1266317, at \*22 (D.N.J. Sept. 30, 1997) (stating that "the implied warranty of merchantability is breached only where there is a defect in the vehicle that renders the vehicle unfit for its ordinary purpose of providing transportation for its owner"). Plaintiff concedes that he drove the Vehicle for more than 20,000 miles over at least two years. (Compl. ¶¶ 21, 38–39, 41.)

      **C.**      **Plaintiff Fails to State Fraud and Misrepresentation Claims (Counts IV and V)**

In Count IV, Plaintiff asserts that Defendant breached the NJCFA by misrepresenting and omitting information regarding the effects of cold weather on his Vehicle's driving range. (Compl. ¶¶ 181–97.) In Count V, Plaintiff alleges that Defendant's advertisements amounted to negligent or reckless misrepresentations. (*Id*. ¶¶ 199–202.)

To state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege that defendant made an incorrect statement which was "justifiably relied upon," causing damages to plaintiff. *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (N.J. 2000) (quotation marks omitted); *see Noble v. Samsung Electronics America, Inc*., 2018 WL 801590, at \*5 (D.N.J. Feb. 8, 2018). "The actual receipt and consideration of any misstatement [is] central to the case of any

plaintiff seeking to prove that he or she was deceived by the misstatement or omission." *Kaufman*, 754 A.2d at 1195. Insofar as a complaint alleges fraud or misrepresentation, it "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The NJCFA prohibits the use of "unconscionable commercial practice[s], deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission" in the sale of merchandise. N.J. Stat. Ann. § 56:8-2. To state an NJCFA claim, a plaintiff must allege (1) unlawful conduct by the defendant, (2) ascertainable loss, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Engineers Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (noting that instead of requiring reliance, as in a traditional fraud claim, the NJCFA requires only "ascertainable loss" caused by defendant's unlawful conduct). NJCFA claims by consumers may be premised on affirmative acts, knowing omissions, or regulatory violations. *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 748 (N.J. 2009). Claims based on affirmative acts need not allege intent, but claims based on omissions must sufficiently allege that the defendant's omission was knowing and intentional. *Id*. at 748–49.

Here, as noted above with respect to Count I, Plaintiff has not sufficiently alleged any misleading advertisements or statements made by Defendant, that he viewed prior to purchasing his used Vehicle in 2018, which were about the particular vehicle model that he purchased. His claim that the Service and Warranty Information pamphlet contained an "incorrect" range is not pleaded with the specificity required by Rule 9(b). (Compl. ¶¶ 104, 119.) *See In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d at 217. And Plaintiff himself admits that the Owner's Manual did *not* omit the effects of cold weather; although it could have been more explicit, it stated

13

that the vehicle's range "can be abruptly reduced" by "climate and terrain conditions." (*Id*. ¶¶ 52, 54–55.) Accordingly, Plaintiff has failed to plausibly allege that he justifiably relied on any specific misrepresentation by Defendant, or that Defendant acted unlawfully in any manner that caused him an ascertainable loss. See *Kaufman*, 754 A.2d at 1195; *Int'l Union of Operating Engineers Loc. No. 68 Welfare Fund*, 929 A.2d at 1086.

### D. Plaintiff Fails to State Unjust Enrichment Claim (Count VI)

In Count VI, Plaintiff asserts that Defendant was unjustly enriched through its wrongful acts alleged in the previous Counts. (Compl. ¶¶ 203–09.) To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege (1) "that defendant received a benefit" from plaintiff and (2) "that retention of that benefit without payment would be unjust." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (quotation marks omitted); *see Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723–24 (D.N.J. 2011). This is a quasi-contract doctrine that requires showing that a defendant's failure to remunerate plaintiff left the defendant "enriched . . . beyond its contractual rights." *Iliadis*, 922 A.2d at 723 (quotation marks omitted).

Here, Plaintiff has not sufficiently alleged that Defendant received a financial benefit from him. *See Dzielak v. Whirlpool Corp.,* 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (dismissing unjust enrichment claim against manufacturer who did not receive benefit from third-party sale). He alleges that he purchased the Vehicle from an unidentified "authorized New Jersey BMW dealer," so it appears that this dealership was enriched by his purchase, and not Defendant, particularly given that it was a pre-owned vehicle. (Compl. ¶¶ 21, 29–31.)[5] Even if this Court accepts as true that Defendant was enriched when Plaintiff purchased a used car from a BMW dealership, Plaintiff

---

[5] The fact that the Vehicle was pre-owned distinguishes this case from *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 200 (D.N.J. 2012), as it is less likely that Plaintiff's purchase from a retailer "increase[ed] the amount of wholesale sales to the manufacturer."

14

has failed to show that any benefit Defendant received was unjust. *See Iliadis*, 922 A.2d at 723. This claim is predicated on the wrongful acts alleged in the previous counts which, for the reasons discussed above, are insufficient to show that Defendant acted unlawfully in advertising his Vehicle. (*See* Compl. ¶¶ 203–09.)

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have thirty (30) days to file an Amended Complaint. An appropriate order follows.

                                               /s/ Susan D. Wigenton
                                        **SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:          Hon. André M. Espinosa, U.S.M.J.
               Parties