<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN HURST and JOSH BRODBECK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Civil Action No. 22-03928<br><br>**OPINION**<br><br>June 11, 2024 |

**SEMPER**, District Judge.

Currently before the Court is Defendant BMW of North America, LLC's ("BMW NA") motion to dismiss Plaintiffs' First Amended Complaint (ECF 41, "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 46, "MTD.") Plaintiffs filed a brief in opposition. (ECF 48, "Opp.") Defendant replied. (ECF 52, "Reply.") Defendant also filed a Request for Judicial Notice, and Plaintiffs filed a cross-motion to substitute Exhibit 1 of the FAC. (ECF 46-2; ECF 49.) The Court reviewed the Plaintiffs' First Amended Complaint and the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' cross-motion is **GRANTED**.

I.        **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff Hurst is a New Jersey resident. (FAC ¶ 36.) Plaintiff Brodbeck is a Colorado resident. (*Id.* ¶ 37.) Defendant is a subsidiary of the automobile manufacturer Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), incorporated in Delaware, with a principal place of business in New Jersey from where it conducts United States activities including marketing, warranty operations, and consumer relations. (*Id.* ¶ 38.) Plaintiffs voluntarily dismissed BMW AG from the FAC on November 10, 2023. (ECF 44.)

In October 2018, Plaintiff Hurst purchased a certified pre-owned 2015 BMW i3 with Range Extender ("i3 REx") from an authorized New Jersey BMW dealer. (FAC ¶ 25.) At the time of purchase, Plaintiff's i3 REx (the "Vehicle") was still under the manufacturer's new vehicle warranty, and it had 23,261 miles on it. (*Id.* ¶¶ 25, 36.) The BMW i3 REx is an electric vehicle equipped with a gasoline engine that extends the driving range beyond what can be reached with an electric battery alone. (*Id.* ¶¶ 1, 22.) The i3 REx has a lower all-electric range than a purely electric i3, because of the added weight of the extra gasoline engine. (*Id.* ¶ 22.)

In advertising the i3 REx and other i3 model electric vehicles (collectively, the "Class Vehicles"), Defendant did not disclose, concealed, or misrepresented the Class Vehicles' real-world cold weather ranges; Defendant only provided vehicle range figures from testing in optimal conditions. (*See id.* ¶¶ 3-5, 9-13, 18-20, 23-24.) Plaintiff Hurst purchased the Vehicle in large part because of Defendant's advertisements stating that the i3 REx had a range of 80 miles on battery only and 150 miles with the range extender. (*Id.* ¶¶ 26-28, 30.) However, Plaintiff was only able to travel 39 miles on a fully charged battery in winter months. (*Id.* ¶ 10.) The Vehicle's dashboard

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). As such, the following facts are taken from Plaintiffs' First Amended Complaint.

display indicated an electric range of less than 50 miles during cold weather, even after it was fully charged, and indicated a decline of 10 more miles after driving 1 to 2 miles. (*Id*. ¶ 45.)

Defendant misrepresented the Vehicle and Class Vehicles' driving ranges in various advertisements and printed materials. (*Id*. ¶¶ 3, 9, 12, 19, 26, 125.) Several of Defendant's sales representatives directly reassured Plaintiff that cold weather does not significantly, if at all, decrease the electric range of the i3. (*Id*. ¶¶ 26, 110, 113.) Plaintiff contacted various BMW dealerships around the country to inquire about how outdoor temperatures affected the i3, and several representatives responded assuring him that cold weather does not affect the range, while others stated that it affects performance "a bit" but not significantly. (*Id*. ¶¶ 76-77.)

Defendant knew prior to the date it introduced Class Vehicles into the U.S. market that cold weather severely diminishes the Class Vehicles' driving range, and the Class Vehicles would not attain the ranges indicated in advertising or promotional material. (*Id*. ¶¶ 14, 42, 74, 91, 103.) Defendant maintains cold weather testing sites in Sweden and elsewhere to test the effects of cold weather on its vehicles' performance. (*Id*. ¶ 42.) Defendant also carefully monitors online forums in which customers have complained about Class Vehicles' reduced range in winter. (*Id*. ¶ 75.)

Plaintiff Hurst notified Defendant of the significantly lower than advertised range and was told to bring his vehicle to an authorized dealer for diagnostic testing, which Plaintiff did on or about February 18, 2021. (*Id*. ¶¶ 48-49.) The BMW technician fully charged the car batteries at room temperature, but the vehicle still indicated a range of only 55 miles. (*Id*. ¶ 49.) The technician informed Plaintiff that there were no flaws found in his battery during testing, but that the cold weather reduced the Vehicle's range and that storing the car outside in 15-20 degree weather would result in the range dropping down to almost nothing. (*Id*. ¶¶ 49-50.) Thus, Plaintiff learned of the false representations giving rise to his claims in February 2021. (*Id*. ¶ 50.)

Plaintiff Hurst would not have purchased the Vehicle, or would have paid less for it, had he known that cold weather severely decreases its driving range. (*Id.* ¶ 26.) Because the Vehicle has a significantly shorter range than Defendant advertised, Plaintiff has used the car only half as much as he intended to, and he was unable to use the car for its intended purpose—his wife's commute of approximately 50 miles round trip. (*Id.* ¶¶ 44-47.) He has also paid more for gasoline, and his car has less resale value. (*Id.* ¶¶ 47, 135, 217.)

Plaintiff Hurst filed this putative class action on June 15, 2022 on behalf of himself and similarly situated individuals who have owned or leased a Class Vehicle. (ECF 1.) Defendant filed a motion for judgment on the pleadings on December 27, 2022. (ECF 21.) Judge Wigenton filed an Opinion and Order granting the motion for judgment on the pleadings and dismissing the complaint without prejudice. (EF 36; ECF 37.) Plaintiffs filed an amended complaint on September 15, 2023. (ECF 41, FAC.) Defendant filed a motion to dismiss the FAC on November 13, 2023. (ECF 46, MTD.) The FAC asserts the following claims: breach of express warranties under UCC § 2-313 (Count I); breach of an implied warranty of merchantability under UCC § 2-314 (Count II); violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(A), (Count III)[2]; employment of unconscionable commercial practices, deception, fraud, false pretense and/or false promise in violation of the New Jersey Consumer Fraud Act ("NJCFA"), (Count IV); violation of Colorado's Consumer Protection Act ("CCPA") (Count V); and negligent misrepresentation (Count VI). (*See id.*) Plaintiffs filed a brief in opposition. (ECF 48, Opp.) Defendant replied. (ECF 52, Reply.) Defendant also filed a Request for Judicial Notice, and Plaintiffs filed a cross-motion to substitute Exhibit 1 of the FAC. (ECF 46-2; ECF 49.)

---

[2] Plaintiffs voluntarily dismissed the Magnuson-Moss Warranty claim on November 10, 2023. (ECF 45.)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

"When a complaint involves allegations of fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) to state a claim under Rule 12(b)(6)." *Franchitti v. Cognizant Tech. Sols. Corp.*, 555 F. Supp. 3d 63, 68 (D.N.J. 2021) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 9(b) (stating that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," though conditions of the mind such as knowledge may be pled generally). "In order to satisfy Rule 9(b), a complaint must provide 'all of the essential factual background that would accompany the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue.'" *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). This standard has been relaxed slightly for fraudulent omission claims where pleading specific times and places may not be practicable and,

5

instead, Rule 9(b) may be satisfied by "alleg[ing] what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *See Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 264 (D.N.J. 2011) (quoting *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010)).

### III. ANALYSIS

In addition to the arguments addressed below, Defendant entered a request for judicial notice in support of its motion to dismiss. (ECF 46-2.) While the Court acknowledges Defendant's submission, the documents had no bearing on the Court's analysis or ruling on this motion to dismiss. As such, the Court declines to take judicial notice of these exhibits at this time. Plaintiffs also filed a cross-motion to substitute Exhibit 1 of the FAC. (ECF 49.) The Court notes the filing's incompliance with Local Rule 7.1(h). Defendants do not oppose the motion. Therefore, the Court will grant Plaintiff's cross-motion to substitute Exhibit 1 of the FAC. The Court now turns to the arguments in the motion to dismiss briefing.

#### A. Federal Preemption

Defendant argues that Plaintiffs' claims are preempted by the EPA and FTC regulatory scheme. (MTD at 11-20.) Plaintiffs assert that the preemption arguments are no longer germane as the FAC does not mention or rely on the Monroney Sticker and that Defendant's other preemption arguments were previously rejected. (Opp. at 11-20.) The Court's prior Opinion dismissed several counts of the original complaint to the extent that the claims were based on the Monroney Stickers. (ECF 36 at 6-10 ("Claims based on the Window Sticker are Preempted").)

"Preemption is an affirmative defense that the defendant has the burden to prove," so a defendant moving to dismiss under Rule 12(b)(6) based on preemption must show that federal

6

preemption is "apparent on the face of the complaint and documents relied on in the complaint." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quotation marks omitted). Preemption is "fundamentally a question of congressional intent." *English v. General Electric Co.*, 496 U.S. 72, 78-79 (1990). "[F]ederal regulations have no less preemptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

### 1. Express Preemption

"Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution[,] are invalid." *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (quotation marks omitted). As relevant here, new vehicle fuel economy and driving range testing and disclosure is governed by the Energy Policy and Conservation Act of 1975 ("EPCA") and by regulations promulgated by federal agencies including the Environmental Protection Agency ("EPA"). *See* 49 U.S.C. §§ 32904; 32908; *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 855-58 (6th Cir. 2023). EPA regulations dictate how car manufacturers must calculate fuel economy and driving range. *See* 40 C.F.R. § 600.210-12. Additionally, the FTC regulates the range estimate content of advertising. 16 C.F.R. §§ 259.3; 259.4(b), (k).

Defendant cites to *Sanchez v. Ford Motor Co.* in arguing that EPA-approved range estimates in advertising were preempted by FTC regulations. No. 13-01924, 2014 WL 2218278, at *4 (D. Colo. May 29, 2014). However, in *Sanchez*, the advertisements from Ford were "fully compliant with the regulations." *Id*. Here, Plaintiffs specifically allege that the deceptive advertising went beyond EPA estimates and instead used Defendant's own in-house "real-world" test results that exceeded EPA estimates. (FAC ¶¶ 3-4.) The prior Opinion noted that Plaintiffs' claims under state law that would require listing a lower driving range than one required by federal

7

law would be expressly preempted. (ECF 36 at 8-9.) However, the FAC's state law claims specify that the EPA testing was omitted from advertising in favor of *higher* battery driving ranges; the FAC alleges that these advertisements provide grounds for colorable state law claims based on misrepresented battery driving ranges and increased vehicle fuel consumption by the engine's subsequent usage. (FAC ¶¶ 2-3, 54, 102, 122.) As such, Plaintiffs' state law claims are not expressly preempted by federal law.

### 2. Conflict Preemption

Defendant argues that Plaintiffs' claims are also conflict preempted. (MTD at 14.) Plaintiffs argue that Defendant's conflict preemption argument is premised on an incorrect contention that Plaintiffs seek range estimate disclosures that are at odds with the requirement of federal regulations. (Opp. at 19.) Conflict preemption is implicated when a state law would "stand as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. KerrMcGee Corp.*, 464 U.S. 238, 248 (1984).

In support of its proposition, Defendant cites to *In re Ford Motor Co. F-150 and Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*, arguing that Plaintiffs' efforts would second guess the FTC regulatory framework and create a separate enforcement scheme. No. 19-02901, 2022 WL 551221, at *1 (E.D. Mich. Feb. 23, 2022), *aff'd*, 65 F.4th 851 (6th Cir. 2023). However, the expressly preempted claims in *Ford* were "false-sticker" claims that imposed a regime above and beyond the EPCA and FTC regulations. *Id*. at *12. Further, the *Ford* court acknowledged that "[t]here is case law that does reflect . . . that claims that are based upon certain representations[] that go beyond including EPA estimates in advertisements[] are not preempted. For example, [*C-Max I*] concluded that the 'Plaintiffs' allegation that Ford did not only rely on the EPA estimate, but also guaranteed real-world fuel economy based upon it is an allegation that goes beyond that

8

estimate . . . and conclude[d] that such claims are not preempted.'" *Id.* at *13 (quoting *In re Ford Fusion & C-MAX Fuel Econ. Litig.*, No. 13-MD-2450, 2015 WL 7018369, at *26 (S.D.N.Y. Nov. 12, 2015). Here again, because the FAC specifically alleges that the deceptive advertising exceeded EPA estimates in using Defendant's in-house "real-world" test results that exceeded EPA estimates, the Court determines that Plaintiffs' claims are not preempted. (*See* FAC ¶¶ 3-4.) Critically, the FAC ameliorated its previous preemption issues by alleging that BMW NA advertising went beyond the EPA estimates and by removing allegations based upon the Monroney Stickers. (*Id.*)

### B. Pleading Sufficiency Analysis

Defendant argues that every claim in the FAC fails to state sufficient facts to allege a viable cause of action. (MTD at 21.) Defendant specifically argues that Plaintiffs have not alleged facts that support a NJCFA claim, CCPA claim, or negligent misrepresentation claim, or show that Defendant breached any written express warranty, warranty by representation, or implied warranty of merchantability. (MTD at 21-37.) The Court assesses each claim in turn.

#### 1. Breach of State Warranty Claims (Counts I and II)

In Count I, Plaintiffs assert that Defendant breached an express warranty, made in Defendant's advertising, that the Vehicle would attain a certain range. (FAC at 44-45.) Defendant argues that Plaintiffs failed to state a claim for express warranty or warranty by representation. To state a claim for breach of express warranty under U.C.C. § 2-313, as adopted into New Jersey law, Plaintiff must sufficiently allege: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F.Supp.2d 712, 721

9

(D.N.J. 2011); *see* N.J. Stat. Ann. § 12A:2-313; *Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 416 A.2d 394, 396 (N.J. 1980).

Defendant argues that this claim fails under the manufacturer's warranty. (MTD at 21-22.) However, "[a] statement can amount to a warranty, even if unintended to be such by the seller, 'if it could fairly be understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance.'" *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993) (applying New Jersey law and quoting *Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 416 A.2d 394, 396, (1980)), abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014); *see also Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 324 (D.N.J. 2014). "[W]hether a given statement constitutes an express warranty is normally a question of fact for the jury." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721-22 (D.N.J. 2011).

In the Court's prior Opinion, the Court noted that "although Plaintiff alleges some misleading advertisements and statements about BMW i3s, they did not plausibly form part of his 'bargain for the product,' or decision to purchase his Vehicle, because he fails to allege any specific statement that was made prior to the purchase of his vehicle, by Defendant, and regarding a 2015 BMW i3 REx." (ECF 36 at 10.) Here, the FAC specifies that "Hurst decided to purchase the i3 REx based in part on . . . advertising and representations which concealed that the i3 could not achieve the claimed 100 miles of battery only range and 185 miles with the Range Extender . . . when attempted to be used in cold weather." (FAC ¶ 26.) The FAC also contains numerous other allegations of Defendant's written affirmations and promises of the i3 REx range of 110 miles in electric mode and 185 miles with the gasoline range extender forming part of the bargain for the

10

product and ultimately not conforming to the alleged representations. (*Id.* ¶¶ 3-4, 26-28, 54, 166.) As such, the FAC sufficiently states a claim for breach of express warranty.

In Count II, Plaintiffs assert that Defendant breached an implied warranty of merchantability because the Vehicle was "defective with respect to battery performance in cold weather" and "unfit for the ordinary purposes and safe operation for which passenger vehicles are used because of those defects causing diminished driving range and utility of Class Vehicles." (FAC ¶ 175.) Under the U.C.C., as adopted into New Jersey law, a warranty of merchantability is "implied in a contract for [the] sale [of goods] if the seller is a merchant with respect to goods of that kind." N.J. Stat. Ann. § 12A:2-314. This includes an implied warranty that the goods are "fit for the ordinary purposes for which such goods are used." *Id.*; *see In re Ford Motor Co. E-350 Van Products Liability Litig. (No. II)*, No. 03-4558, 2008 WL 4126264, at *19 (D.N.J. Sept. 2, 2008). Merchantability does not mean that the goods are perfect or that they are exactly as the merchant described them to be, but only that they are "reasonably fit for the purpose intended." *Jakubowski v. Minn. Mining & Mfg. Co.*, 199 A.2d 826, 831 (N.J. 1964).

Plaintiffs argue that they are not able to use their Class Vehicles for their ordinary purposes because of the severely diminished range making them unfit for daily commuting, noting that Plaintiffs were forced to use gasoline to achieve the mileage promised, citing to *Kavon*. (Opp. at 25-26.) However, unlike the *Kavon* court noted in that case, the FAC here does not allege that the Vehicles could not operate on electricity at all, nor that they relied exclusively on gasoline. *See Kavon v. BMW of North America, LLC*, 605 F.Supp.3d 622, 637 (D.N.J. 2022). Further, because the FAC still alleges that the Vehicles were able to be used for transportation generally, the Court maintains its dismissal of Count II. *Sheris v. Nissan N. Am. Inc.*, No. 07-2516, 2008 WL 2354908, at *5-6 (D.N.J. June 3, 2008) (stating that a vehicle's ordinary purpose is to provide transportation);

11

*see also In re: Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, No. 96-3125, 96-1814, 96-3198, 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997) (stating that "the implied warranty of merchantability is breached only where there is a defect in the vehicle that renders the vehicle unfit for its ordinary purpose of providing transportation for its owner").

### 2. Violations of State Fraud and Misrepresentation Claims (Counts IV, V, and VI)

In Count IV, Plaintiffs assert that Defendant breached the NJCFA by misrepresenting and omitting information regarding the effects of cold weather on the Vehicle's driving range. (FAC at 50-56.) In Count V, Plaintiffs assert that Defendant breached the CCPA by committing unconscionable, deceptive, and unfair trade practices by knowingly concealing the material information regarding the Class Vehicle stated range. (FAC at 57-64.) In Count VI, Plaintiffs assert that Defendant's advertisements amounted to negligent or reckless misrepresentations. (FAC at 64.)

The NJCFA prohibits the use of "unconscionable commercial practice[s], deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission" in the sale of merchandise. N.J. Stat. Ann. § 56:8-2. To state an NJCFA claim, a plaintiff must allege (1) unlawful conduct by the defendant, (2) ascertainable loss, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007). NJCFA claims by consumers may be premised on affirmative acts, knowing omissions, or regulatory violations. *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 748 (N.J. 2009). Claims based on affirmative acts need not allege intent, but claims based on omissions must sufficiently

allege that the defendant's omission was knowing and intentional. *Id.* at 748-49. Here, as discussed in Section III.B.1. *supra*, the FAC has sufficiently ameliorated the prior pleading deficiencies in alleging misleading advertisements or statements made by Defendant that Plaintiff viewed prior to purchasing his used Vehicle. (FAC ¶¶ 3-4, 26-28, 54, 166.) The FAC also sufficiently alleges Defendant's knowledge and intent. (*Id.* ¶¶ 26, 77-78, 91-92.) As such, the Court declines to dismiss the NJCFA omission and misrepresentation claim at this juncture.

The Colorado Consumer Protection Act ("CCPA") "was enacted to regulate commercial activities and practices which, 'because of their nature, may prove injurious, offensive, or dangerous to the public.'" *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (internal citations omitted). To that end, the "CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing . . . remedies against consumer fraud." *Id.* To bring an action under the CCPA, a plaintiff must show:

> (1) that the defendant engaged in an unfair or deceptive trade practice;
> (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
> (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
> (4) that the plaintiff suffered injury in fact to a legally protected interest; and
> (5) that the challenged practice caused the plaintiff's injury.

*Id.* at 146-47.

The CCPA does not permit class action claims for monetary relief. *See* Colo. Rev. Stat. § 6-1-113(2) (2022) (noting that "damages are available "[e]xcept in a class action"); *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218-1219 (D. Colo. 2012) (finding that the "plain and unambiguous language of the statute compels the conclusion that all of the remedies . . . including actual damages, are not available to classes" and holding that "the CCPA creates no statutory liability for a defendant in a private class action"). As such, Plaintiff's putative class claim will be dismissed.

13

Regarding Plaintiff's individual claim, it must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b); *Hansen v. Auto–Owners Ins. Co.*, No. 09-2736, 2010 WL 749820, at *2 (D. Colo. Mar. 4, 2010) (holding that a CCPA claim for deceptive trade practices "must be pled with particularity pursuant to Fed. R. Civ. P. 9(b)") (collecting cases). Here, each element of Plaintiff Brodbeck's individual claim is pled with sufficient particularity. (*See* FAC ¶¶ 3-4, 10, 13, 15-16, 21, 27, 29, 54, 94, 102, 109, 166, 226, 231, 237.)

To state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege that defendant made an incorrect statement which was "justifiably relied upon," causing damages to plaintiff. *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (N.J. 2000) (quotation marks omitted); *see Noble v. Samsung Elecs. Am., Inc.*, No. 15-3713, 2018 WL 801590, at *5 (D.N.J. Feb. 8, 2018). "The actual receipt and consideration of any misstatement [is] central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission." *Kaufman*, 754 A.2d at 1195. Insofar as a complaint alleges fraud or misrepresentation, it "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). As discussed in Section III.B.1. *supra*, the FAC has sufficiently alleged specific advertisements or statements made by Defendant that Plaintiffs viewed prior to purchasing the Vehicles. (FAC ¶¶ 3-4, 26-28, 54, 166.) Defendants also argue that the negligent misrepresentation claim is barred by the economic loss doctrine. (MTD at 34-36.) The economic loss doctrine stands for the principle that a plaintiff who is dissatisfied with a product must bring a breach of contract or warranty claim. *Alloway v. Gen. Marine Indus., L.P.*, 632, 695 A.2d 264, 270 (N.J. 1997) ("When the harm suffered is to the product itself, unaccompanied by personal injury or property damage, we concluded that principles of contract, rather than of tort law, were better suited to resolve the purchaser's claim. Consequently, we held that the U.C.C. provided the appropriate period of limitations."). However, the doctrine

14

does not always bar claims for negligent misrepresentation. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *21 (D.N.J. May 8, 2017) (applying, *inter alia*, New Jersey law; finding that "Plaintiffs' negligent misrepresentation claim [was] independent of any contractual claim . . . [and] alleged that potential for personal injury in connection with the allegedly defective [product]"). The threshold question regarding the economic loss doctrine's applicability is "whether the allegedly tortuous conduct is extraneous to the contract." *Atlas Acquisitions, LLC v. Porania, LLC, et al*, No. 18-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019). Plaintiffs argue Defendant owed an independent duty to disclose outside of any contractual duty. *See Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002). Negligent misrepresentation claims based on economic loss have survived dismissal in such situations. *See Timing Chain Litig.*, 2017 WL 1902160, at *18. Because the FAC contains allegations of Defendant's exclusive knowledge concerning the decreased range and performance in cold ambient temperatures, Defendant's motion to dismiss Count VI is denied.

### C. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (ECF 46) is **GRANTED IN PART** and **DENIED IN PART.** Count II is dismissed without prejudice. The putative class claim in Count V is dismissed with prejudice. Plaintiffs' cross-motion to substitute Exhibit 1 of the FAC (ECF 49) is **GRANTED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:     André M. Espinosa, U.S.M.J.
        Parties